IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **Shawn C. Northrup,** | ) | Case No. 3:12-cv-01544-JJH |
| | ) | |
| Plaintiff, | ) | Judge Jeffrey J. Helmick |
| | ) | |
| vs. | ) | **MOTION FOR SUMMARY JUDGMENT** |
| | ) | **AND MEMORANDUM** |
| **City of Toledo, *et al.,*** | ) | |
| | ) | Adam Loukx, Director of Law |
| Defendants. | ) | (0062158)) |
| | ) | John T. Madigan, Senior Attorney |
| | ) | (0023614) |
| | ) | City of Toledo, Department of Law |
| | ) | One Government Center, Suite 2250 |
| | ) | Toledo, Ohio 43604-2293 |
| | ) | Telephone: (419) 245-1020 |
| | ) | Fax: (419) 245-1090 |
| | ) | |
| | ) | Counsel for Defendants |

Now comes the Defendants under Fed.R.Civ.P.56(C) and move the court for summary judgment. Defendants make this motion since there is no genuine issue of a material fact and they are entitled to judgment as a matter of law.

Plaintiff's complaint fails to set forth a violation of his rights under the United States Constitution and Plaintiff cannot maintain an action for violation of his rights under the Ohio Constitution. Additionally, the individual defendants are entitled to qualified immunity with respect to Plaintiff's constitutional claims. Defendants are likewise immune from Plaintiff's state law claims under Ohio Revised Code Chapter 2744. The basis for this motion is fully set forth in the Memorandum attached hereto.

**WHEREFORE** Defendants move that judgment be granted in their favor and that the Plaintiff's complaint be dismissed with prejudice at Plaintiff's cost.

Respectfully submitted,

ADAM W. LOUKX, DIRECTOR OF LAW

/s/   John  T. Madigan
John T. Madigan, Senior Attorney
Counsel for Defendants

2

# TABLE OF CONTENTS

Page

I.   Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   iii

II.  Issues Presented. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

III. Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

   1. Argument Summary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

   2. Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

   3. Law and Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

      A. Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

      B. Plaintiff's Second Amendment Rights Were Not Violated As He Was
         Not Denied The Right to Bear Arms. . . . . . . . . . . . . . . . . . . . . . . . . . .   6

      C. Plaintiff's Fourth Amendment Rights Were Not Violated As the
         Officers Conducted A Lawful Investigatory Stop. . . . . . . . . . . . . . . . . .   8

         1. The officers had reasonable suspicion to stop the Plaintiff. . . . . . . . . . . .   8

         2. The nature of the investigatory stop was limited in scope and
            duration to accomplishing the basis of the stop. . . . . . . . . . . . . . . . . . . .   10

         3. Qualified Immunity Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

         4. Officer Bright and Sergeant Rays' actions were objectively
            reasonable in Light of the clearly existing law. . . . . . . . . . . . . . . . . . . .   14

            a. Plaintiff's Second Amendment Rights were not clearly
               established at the time of the stop. . . . . . . . . . . . . . . . . . . . . . . . . . .   14

            b. The Officers acted reasonable in light of clearly
               established law with respect to investigatory stops. . . . . . . . . . . . . . . .   15

            c. Defendants acted reasonable in light of Plaintiff's First
               Amendment rights. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

         5. Officer Bright and Sergeant Ray are entitled to Qualified
            Immunity for Campbell's claim that he was injured as a
            result of being handcuffed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

6. Plaintiff cannot maintain his *Monell* claim against the City as
   there is no underlying constitutional violation. . . . . . . . . . . . . . . . . . . . . . . .  18

7. The City of Toledo and the individual Defendants in their official
   capacities are immune from Plaintiff's State Law Claims. . . . . . . . . . . . . .  18

IV.  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

V.  Certification. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

## I.     TABLE OF AUTHORITIES

### CASES

*Anderson v. Liberty Lobby,Inc.*477 U.S. 242, 106 S.Ct.2505, 91 L.Ed.2d 202(1986) . . . . . . . . 6

*Blake v. Wright*, 179 F.3d 1003 (6ht Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Bletz ex rel.Estate of Bletz v. Gribble*, 640 F.Supp.2d 907 (W.D.Mich, 2009) . . . . . . . . . . . . . 14

*Brosseau v. Haugen*, 543 U.S. 194, 125 S.Ct.596, 160 L.Ed.2d 583 (2004) . . . . . . . . . . . . . . . 13

*Burchett v. Kiefer*, 310 F.3d 937 (6th Cir.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Butcher v. City of Cuyahoga Falls,* N.D. Ohio, No.5:11-cv-939, 2011 WL 5971043, (Nov.28, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Campbell v. Stamper*, 244 Fed.Appx.629, 2007 WL 1958629 (6th Cir.2007) . . . . . . . . . . . . 9, 15

*Cater v. City of Cleveland*, 83 Ohio St.3d.24 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Celotex Corp. v. Catrett,* 477 U.S.317, 106 S.Ct.2548, 91 L.Ed.2d. 265 (1986) . . . . . . . . . . . . 5

*Ciminillo v. Streicher*, 434 F.3d 461 (6th Cir.2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Evans v. Smith*, 97 Ohio App.3d 59 (1st Dist.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Glenn v. City of Tyler*, 242 F.3d 307 (5th Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Gold v. City of Miami*, 121 F.3d 1442 (11th Cir.,1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Gonzales v. Village of West Milwaukee*, E.D. Wis.,No.09 cv 0384, 2010 WL 1904977 (May 11, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Harlow v. Fitzgerald*, 475 U.S. 800, 102 S.Ct.2727, 73 L.Ed.2d 396 (1982) . . . . . . . . . . . . . . 12

*Harrill v. Blount County Tenn.*, 55 F.3d 1123 (6th Cir.,1995) . . . . . . . . . . . . . . . . . . . . . . . . 8

*Heller v. City of Los Angeles*, 475 U.S.796, 106 S.Ct.1571, 89 L.Ed.2d 806 (1986) . . . . . . . . . 18

*Hill v. Urbana*, 79 Ohio St.3d 130 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 815 (6th Cir.1999 . . . . 11

*Hubbard v. Canton City School Bd. of Educ.*97 Ohio St.3d 451 (2002) . . . . . . . . . . . . . . . . . 19

*Humphrey v. Mabry*, 482 F.3d 840 (6th Cir.,2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hunter v. Bryant*, 502 U.S.224, 112 S.Ct.534, 116 L.Ed.2d 589 (1991) . . . . . . . . . . . . . . . . 12

*Illinois v. Gates*, 462 U.S.213, 103 S.Ct.2317, 76 L.Ed.2d 527 (1983) . . . . . . . . . . . . . . . . . 8

*Klein v. Leis*, 99 Ohio St.3d 537,795 N.E.2d 633 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Kostrzewa v. City of Troy*, 247 F.3d 633 (6th Cir.,2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Krantz v. City of Toledo Police Dept.*, 365 F.Supp.2d 832 (N.D.Ohio, 2005) . . . . . . . . . . . . 20

*Lambert v. Clancy*, 125 Ohio St.3d 231 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Malley v. Briggs*, 475 U.S. 335, 106 S.Ct.1092, 89 L.Ed.2d 271 (1986) . . . . . . . . . . . . . . . . 13

*Matsushita Elec.Indus.Co. v.Zenith Radio Corp..,*475 U.S. 574, 106 S.Ct.1384, 89 L.Ed.2d 538 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*McDonald v. City of Chicago,Ill.* 130 S.Ct.3020, 177 L.Ed.2d 894 (2010) . . . . . . . . . . . . . 7, 14

*McFinley v. Bethesda Oak Hosp.*,79 Ohio App.3d 613 (1st Dist.,1992) . . . . . . . . . . . . . . . . . 20

*Meadows v. Thomas*, 117 Fed.Appx.397 (6th Cir.,2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) . . . . . . . . . . . . . . 13

*Monell v. Department of Social Services*, 436 U.S.658, 98 S.Ct.2018, 56 L.Ed.2d 611 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*O'Malley v. City of Flint*, 652 F.3d 662 (6ht Cir.,2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17

*Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct.808, 172 L.Ed.2d 565 (2009) . . . . . . . . . . . . . 14

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct.1292, 89 L.Ed. 2d 452 (1986) . . . . . . 18

*People's Rights Organization, Inc. v. City of Columbus* 152 F.3d 522 (6th Cir.,1998) . . . . . . . 7

*Presser v. People of the State of Illinois*, 116 U.S.252, 6 S.Ct.580, 29 L.Ed.614 (1886) . . . . . . 7

*S.H.A.R.K. v. Metro Parks Serving Summit County*, 9th Dist. No. 24443, 2009-Ohio-3004, (June 24, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Saucier v. Katz*, 533 U.S. 194, 121 S.Ct.2151, 150 L.Ed.2d 272 (2001) . . . . . . . . . . . . . . . . 12

*Smith v. Campbell*, 250 F.3d 1032 (6ht Cir.,2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

iv

*Terry v. Ohio*, 392 U.S.1, 88 S.Ct.1868, 20 L.Ed.2d 889 (1986) . . . . . . . . . . . . . . . . . . . . . 8, 14

*Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir.,1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Bradshaw*, 102 F.3d 204 (6th Cir.,1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Campbell*, 549 F.3d 364 (6th Cir.,2008) . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

*United States v. Cortez*, 449 U.S. 411, 101 S.Ct.690, 66 L.Ed.2d 345 (1981) . . . . . . . . . . . . 10

*United States v. Cruikshank*, 92 U.S. 542, 23 L.Ed. 588 (1875) . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Davis*, 430 F.3d 345 (6th Cir.,2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*United States v. Garza*, 10 F.3d 1241 (6th Cir.,1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Lumpkin* ,159 F.3d 983 (6th Cir.,1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Obasa*, 15 F.3d 603, (6th Cir.,1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Perez*, 440 F.3d 363 (6th Cir.,2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Wendt v. City of Kansas City, Kansas*, Civ.A.No.89-2463-0 (D.Kan.,1991) . . . . . . . . . . . . . 17

*Williams v. Mehra*, 186 F.3d 685 (6th Cir.,1999) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . 13

## **STATUTES**

42 U.S.C.§ 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 18

42 U.S.C.§ 1985. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Ohio Revised Code § 2744.01. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Ohio Revised Code § 2744.02. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Ohio Revised Code § 2744.03. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Ohio Revised Code § 2917.31. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 11

Ohio Revised Code § 2921.29. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Ohio Revised Code § 2923.13. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 7

## II.    ISSUES PRESENTED

1. Whether the investigatory stop and detention of the Plaintiff conducted by the Toledo Police was based upon a reasonable suspicion that a crime had been committed or was about to be committed.

2. Whether the Toledo Police officers were protected from liability based upon the doctrine of qualified immunity.

3. Whether the Plaintiff has a claim for relief for violation of his right to bear arms under the Second amendment of the United States Constitution or the Ohio Constitution.

4. Whether the Toledo Police officers are immune from liability from Plaintiff's state law claims Under Chapter 2744 of the Ohio Revised Code.

## III.    SUMMARY OF ARGUMENT

### 1. ARGUMENT SUMMARY

The Plaintiff filed this complaint under against the City of Toledo Police Division, Toledo Police officer David Bright, Donald Comes and Sergeant Daniel Ray alleging violation of his constitutional rights against illegal searches and seizures and use of excessive force under the Fourth  amendment, violation of his First amendment right to freedom of speech, violation of his Second amendment right to bear arms, deprivation of liberty without Due Process of Law, failure to train, discipline, monitor, control and supervise officers by the Toledo Police Department, Acting Under Color of Law all pursuant 42 U.S.C.§ 1983 and § 1985, and state law claims of assault and battery, false arrest and malicious prosecution.

These claims arose out of a brief detention conducted by Toledo Police officers on June 16, 2010. This detention occurred after Officer David Bright was dispatched after a 9-1-1

emergency call alerting the police to a man carrying a gun on a city street. Officer Bright observed the Plaintiff carrying a pistol as described and proceeded to investigate in order to determine if the Plaintiff had was under a legal disability to carry a firearm. After the Plaintiff refused to answer the officer's question and made a furtive movement toward his gun, Officer Bright placed him in handcuffs. Within thirty-six minutes of the initial stop the officer had determined that the Plaintiff could lawfully carry a pistol. The officer released the Plaintiff and returned his gun to him.

In this case the actions of the police officers were based upon a reasonable suspicion that an offense had been committed and were therefore not violative of the Plaintiff's constitutional rights. Even if a violation of the Plaintiff's rights did occur, the officers were protected from liability under the doctrine of qualified immunity since their action were objectively reasonable and they did not act in violation of any clearly established law. The Plaintiff's sate law claims against the officers should be dismissed because they are immune from liability under Chapter 2744 of the Ohio Revised code. Their actions were not willful, wanton or malicious barring them from state law immunity protection. Finally, the Plaintiff has no right of action for violation of his second amendment right to bear arms under either the United States or Ohio Constitutions.

## 2. FACTS

At 5:10 P.M. on the afternoon of June 16, 2010 the City of Toledo Police Department received a telephone call from Allen Rose who reported that a white male walking his dog on Rochelle Rd. was carrying a hand gun out in the open. The man walking on Rochelle Rd was further described as 6'4" in height with a long ponytail and wearing tan pants.(Bright Depo.,p.33, Exhibit 1). Officer David Bright was dispatched to the scene and began searching the area. At 5:22 P.M., he observed the Plaintiff who matched the description given walking on

2

Hayes Street along with his wife, two children and a dog. As he drove closer, Officer Bright observed the Plaintiff wearing a semi-automatic pistol on his hip in a holster. (Bright Depo.p.37). As Officer Bright approached he noticed that the Plaintiff was holding a dog leash. Officer Bright asked Mr. Northrup to hand the leash to his wife which he did. The Plaintiff, who was then standing at a right angle to Officer Bright, then moved his hands in the direction of his gun and a cellular telephone he was also carrying. The officers ordered Mr. Northrup to hand over his cell phone to his wife which order the Plaintiff initially refused to obey. After several requests to hand over the phone he finally did so. At this point, Officer Bright, after observing what he believed to be furtive movements made by Mr. Northrup ordered the Plaintiff to turn around so that the officer could disarm him.(Bright Depo.p.54,Exhibit"A"). This request, like the preceding one to hand over the cell phone, was repeated several times before the Plaintiff obeyed.(Bright Depo. p.38). Finally, Officer Bright was able to secure the Plaintiff's weapon. At this point, the officer had not spoken with the original 9-1-1 caller so he proceeded to question Mr. Northrup regarding the incident. Mr. Northrup then began to explain to the officer that he had been in a verbal exchange with the person who called the police. This discussion included vulgarities and an argument over the open carrying of a firearm. Officer Bright believed that this confrontation might have resulted in an offense of inducing panic. (Bright Depo.p.40). The officer next asked the Plaintiff for his driver's license to confirm his identification. This request, like the preceding ones, had to be repeated three times before the Plaintiff complied.(Bright Depo. pp.48-49). Officer Bright then asked Mr. Northrup for his concealed weapon carry permit (CCW). The officer's purpose for making this request was to quickly confirm that the Plaintiff was not prohibited from possessing a firearm under Ohio Revised Code § 2923.13 (Having

Weapons While Under A Disability)[1] since a criminal background record check is required to obtain such a permit.(Bright Depo.p.49). When the Plaintiff refused to answer any more of the officer's questions, Officer Bright placed handcuffs on Mr. Northrup and seated him in the rear of his patrol car.(Bright Depo. p.61). The Plaintiff complained that the handcuffs were too tight and Officer Bright immediately loosened them (Bright Depo.p.51).

After the Plaintiff was placed in the rear of Officer Bright's car, Sergeant Daniel Ray, Officer Bright's supervisor, arrived on the scene at 5:26 P.M.. (Ray Dep. p.19) .Officer Bright initially intended to charge the Plaintiff with the offense of Inducing Panic, Ohio Revised Code § 2917.31[2] but Sergeant Ray decided to contact the Toledo Police Detective Bureau to insure that the proper charge was filed. Sergeant Ray explained to Detective Phil Wauford everything that had occurred. Detective Wauford advised Sergeant Ray that Mr. Northrup should be charged

---

[1] 2923.13 Having weapons while under disability.
(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
(1) The person is a fugitive from justice.
(2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.
(3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.
(4) The person is drug dependent, in danger of drug dependence, or a chronic alcoholic.
(5) The person is under adjudication of mental incompetence, has been adjudicated as a mental defective, has been committed to a mental institution, has been found by a court to be a mentally ill person subject to hospitalization by court order, or is an involuntary patient other than one who is a patient only for purposes of observation. As used in this division, "mentally ill person subject to hospitalization by court order" and "patient" have the same meanings as in section 5122.01 of the Revised Code.

[2] 2917.31 Inducing panic.
(A) No person shall cause the evacuation of any public place, or otherwise cause serious public inconvenience or alarm, by doing any of the following:
(1) Initiating or circulating a report or warning of an alleged or impending fire, explosion, crime, or other catastrophe, knowing that such report or warning is false;
(2) Threatening to commit any offense of violence;
(3) Committing any offense, with reckless disregard of the likelihood that its commission will cause serious public inconvenience or alarm.
(B) Division (A)(1) of this section does not apply to any person conducting an authorized fire or emergency drill.
(C)
(1) Whoever violates this section is guilty of inducing panic.
(2) Except as otherwise provided in division (C)(3), (4), (5), (6), (7), or (8) of this section, inducing panic is a misdemeanor of the first degree.

with Failure to Disclose Personal Information, Ohio Revised Code § 2921.29[3], a misdemeanor of the fourth degree. Officer Bright then removed the handcuffs from the Plaintiff and issued him a citation for Failure to Disclose Personal Information. At 5:58 P.M. Officer Bright left the scene to return to the Scott Park district police station.(Bright Depo. p.75).

Officer Donald Comes, the third Toledo Police officer named in the complaint, had no direct contact with the Plaintiff. His only involvement was to interview the 9-1-1 caller, Allen Rose and report to Officer Bright what had occurred between Mr. Rose and the Plaintiff (Bright Depo.p.67). The criminal charge of Failure to Disclose Personal Information was subsequently dismissed at the request of Daniel Pilrose, an assistant City of Toledo prosecutor.(Bright Depo.p.91).

## 3. LAW AND ARGUMENT

### A. Standard of Review.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Of course, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those

---

[3] 2921.29 Failure to disclose personal information.
(A) No person who is in a public place shall refuse to disclose the person's name, address, or date of birth, when requested by a law enforcement officer who reasonably suspects either of the following:
(1) The person is committing, has committed, or is about to commit a criminal offense.
(2) The person witnessed any of the following:
(a) An offense of violence that would constitute a felony under the laws of this state;
(b) A felony offense that causes or results in, or creates a substantial risk of, serious physical harm to another person or to property;
(c) Any attempt or conspiracy to commit, or complicity in committing, any offense identified in division (A)(2)(a) or (b) of this section;
(d) Any conduct reasonably indicating that any offense identified in division (A)(2)(a) or (b) of this section or any attempt, conspiracy, or complicity described in division (A)(2)(c) of this section has been, is being, or is about to be committed.
(B) Whoever violates this section is guilty of failure to disclose one's personal information, a misdemeanor of the fourth degree.
(C) Nothing in this section requires a person to answer any questions beyond that person's name, address, or date of birth. Nothing in this section authorizes a law enforcement officer to arrest a person for not providing any information beyond that person's name, address, or date of birth or for refusing to describe the offense observed.
(D) It is not a violation of this section to refuse to answer a question that would reveal a person's age or date of birth if age is an element of the crime that the person is suspected of committing.

portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes *1102 demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (*quoting* Fed.R.Civ.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex, supra.* at 2553. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### B.  Plaintiff's Second Amendment Rights Were Not Violated As He Was Not Denied The Right to Bear Arms.

The Plaintiff argues that the Defendant officers violated his Second Amendment right to bear arms. Plaintiff does not identify any ordinance or regulation by the City of Toledo prohibiting or limiting his right to bear arms.  Plaintiff's firearm was returned to him at the conclusion of the investigatory stop. As such, Plaintiff's claim appears to be based on the 36

6

minute period where Officer Bright had control of the Plaintiff's handgun during this investigatory stop.

As an initial matter, there is a question as to whether the Second Amendment applies to Plaintiff's claims. At the time of the Plaintiff's stop, the Second Amendment did not apply to state governments, but rather, was limited to actions by the federal government. *United States v. Cruikshank*, 92 U.S. 542, 23 L.Ed.588 (1875), *Presser v. People of State of Illinois*, 116 U.S. 252, 264, 6 S.Ct.580, 29 L.Ed.614 (1886); *People's Rights Organization, Inc. v. City of Columbus*, 152 F.3d 522, 538 fn.18 (6th Cir.1998). On June 28, 2010, the United States Supreme Court overruled this long standing precedent and held for the first time that the Second Amendment applies to the states. *McDonald v. City of Chicago*, 130 S.Ct.3020, 177 L.Ed.2d 894 (2010). As this decision was not issued until twelve days after Plaintiff's investigatory stop, there is a question as to whether the City of Toledo or its officers could have violated a right which the Plaintiff did not posses at the time.

Even assuming that *McDonald* applies retroactively, Plaintiff still cannot maintain his claim as he was only arguably deprived of his firearm for 36 minutes during the investigatory stop. This is, at best, a de minimis deprivation, which does not rise to the level of a constitutional violation. See *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir.1999), *Butcher v. City of Cuyahoga Falls*, N.D.Ohio, No.5:11-cv-939, 2011 WL 5971043 (Nov.28, 2011).
The Plaintiff does have a fundamental right to bear arms under the Ohio Constitution but this right is subject to limitations. *Klein v. Leis*, 99 Ohio St.3d 537,539, 795N.E.2d 633 (2003). One of those limitations is the prohibition of felons from possessing firearms. R.C.§ 2923.13. Even if the Plaintiff could prove that his right to bear arms under the Ohio Constitution has been violated, there is no mechanism under Ohio law to obtain money damages for such violations.

Nor are Ohio's laws actionable under 42 U.S.C.§ 1983.See *Harrill v. Blount County Tenn.*, 55 F.3d 1123,1125 (6th Cir.,1995).

### C. Plaintiff's Fourth Amendment Rights Were Not Violated As the Officers Conducted A Lawful Investigatory Stop.

#### 1. The officers had reasonable suspicion to stop the Plaintiff.

*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct.1868, 20 L.Ed.2d 889 (1968), permits a "stop and frisk" by police where the stop is based o specific, articulable facts indicating reasonable suspicion that a crime has been committed. Furthermore, the scope of the activities permitted during an investigative stop is determined by the circumstances that initially justified the stop.*United States v. Obasa*, 15 F.3d 603, 607 (6th Cir. 1994). A stop is proper as long as it is supported by reasonable suspicion and the degree of the intrusion is reasonably related in scope to the situation at hand. *United States v. Davis*, 430 F.3d 345, 354. The test for probable cause is simply whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Lumpkin,* 159 F.3d 983, 986 (6th Cir.1998) (internal quotation marks omitted). The existence of probable cause must be determined using a "totality of the circumstances" test; that is, the question is whether, given all of the facts known to the police officer, there is a fair probability that contraband or evidence will be found in a particular place. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). This test allows the court "determine whether the individual factors, taken as a whole, give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior when examined separately." *United States v. Perez,* 440 F.3d 363, 371 (6th Cir.2006), *United States v. Campbell*, 549 F.3d 364 (6th Cir.2008).

Here, Officer Bright received a 9-1-1 call of a man carrying a handgun in the open. The manner in which the Plaintiff was carrying the gun was not provided to the officers. Officer Bright's knowledge of the Plaintiff's activities was limited to the fact that an emergency call had been received by the Toledo Police Department of a man on Rochelle Dr. with a gun. Since he was dispatched to the scene, it was his duty to investigate. The Plaintiff's open possession of a firearm provided a reasonable suspicion for an investigatory stop. Further, the manner and scope of the stop did not exceed what was necessary to confirm that the Plaintiff was properly in possession of the firearms and had no criminal intentions.

In *Butcher v. City of Cuyahoga Falls, supra.* the District Court examined the conduct of a plaintiff who was stopped by the police who observed him loitering in front of a store while carrying two firearms. That court citing *Gonzales v. Village of West Milwaukee*, E.D.Wis.,No. 09 CV 0384, 2010 WL 1904977 (May 11, 2010) found that there was probable cause to arrest Mr. Butcher. As the court noted, "When police respond to a "man with a gun" call they cannot know the person's intentions and such a situation could easily lead to someone being harmed". In this case there is no allegation that Officer Bright knew or should have known that the Plaintiff did not have any criminal intentions when he responded to the call. The officer could not tell solely by looking at the Plaintiff if he was a felon or a person under a disability from possessing weapons. The officer did not know if Mr. Northrup had threatened the person who made the 9-1-1 call or if a conflict between the two men was likely to recur. Had the officers disregarded the dispatch or failed to investigate the Plaintiff's activities, they would be exposed to liability in the event that the Plaintiff did harm to someone with his weapon.

In *Campbell v. Stamper*, 244 Fed.Appx.629, 2007 WL 1958629 (6th Cir.2007) the court of appeals upheld a similar stop. In that case, an unidentified individual called the Kentucky State

9

Police and reported a man on the side of the road pointing a rifle at passing motorists. The troopers spotted Mr. Campbell leaning on a guardrail with a firearm near him. The officers responded with weapons drawn and ordered Mr. Campbell to move away from his weapon and lay face down. The officers then conducted a frisk search and handcuffed Mr. Campbell prior to questioning him to determine whether he was involved in any criminal activity.

In holding that the facts "clearly demonstrated" that the troopers had reasonable suspicion to stop Mr. Campbell, the court referenced the anonymous call, the fact that Mr. Campbell was in an area identified by the tipster and the obvious presence of a firearm. Though it was ultimately determined that Mr. Campbell was not the individual identified by the caller, the Court of Appeals nonetheless determined that reasonable suspicion existed for the stop. In *Campbell* the caller was anonymous. Here, the caller gave his name and address to the police and informed them that he had been in an argument with a man carrying a gun. This information provided the officer with a "particularized and objective basis for suspecting criminal activity" such that the brief stop of the Plaintiff was proper. *United States v. Cortez*, 449 U.S.411, 417-418, 101 S.Ct.690, 66 L.Ed.2d 621 (1981).

### 2.  The nature of the investigatory stop was limited in scope and duration to accomplishing the basis of the stop.

An investigatory stop is reasonable where it is sufficiently limited in time and the investigative means used were the least intrusive means reasonably available. *United States v. Davis*, 430 F.3d 345 (6th Cir.2005).  The ultimate question is whether the detention exceeded the purpose and objective of the stop. *United States v. Bradshaw, 102 F.3d 204, 212 (6th Cir.1996).*

In this case the Plaintiff was detained for 36 minutes based upon the Toledo Police dispatcher's call log. The Plaintiff does not dispute this amount of time.(Northrup Depo.p.38  )

There is no rigid time limit for a *Terry* stop. *United States v. Garza*, 10 F.3d 1241, 1246 (6th Cir. 1993). A stop of 36 minutes to one hour is not improper when all steps in the stop are necessary to ensure the officer's safety and to confirm or dispel the suspicions. *Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 815 (6th Cir.1999). Both Officer Bright's and the public's safety required that the Plaintiff's weapon be secured so that he could not potentially cause injury. It was also necessary to run checks to determine the Plaintiff's ability to posses a firearm and to question the Plaintiff with respect to his intentions. The officer's question concerning Mr. Northrup's possession of a concealed carry permit was an expeditious way of determining the Plaintiff's lawful right to posses firearms generally. In conducting a *Terry* stop an officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. *United States v. Campbell supra.* at 372. Had Northrup answered the question promptly, his detention would have undoubtedly been shorter.

In the case *sub judice* the Plaintiff admits he had a pistol on his person and with the location of this readily apparent weaponry, the officers' decision to approach Plaintiff and to handcuff him during the investigatory stop were necessary for both officer and public safety. Officer Bright was dispatched based on a 9-1-1 emergency call of a man carrying a gun. The Plaintiff did, in fact, have a hand gun in a holster in open view to the public. Officer Bright believed that this call may have been prompted by a violation of Ohio Revised Code § 2917.31(A)(2), Inducing Panic. There are no allegations that the officers knew or should have known that Plaintiff did not intend to harm himself, the officers or any member of the public. As in *Campbell*, the officer's decision to approach Plaintiff and to handcuff him while conducting the investigation was necessary for both officer and public safety. Unlike the police officer in

11

*Campbell*, Officer Bright did not draw his weapon. He did, however, feel his personal safety was in jeopardy when he observed Northrup make a furtive movement in the direction of his holstered weapon. (Bright Depo.p.37)

As the stop was based on reasonable suspicion and was limited the time and scope, Plaintiff's Fourth Amendment rights were not violated and the claim must be dismissed.

### 3. Qualified Immunity Standard.

In federal civil rights actions seeking money damages, government officials performing discretionary functions are entitled to qualified immunity so long as their acts do not violate clearly established statutory or constitutional rights of which a reasonable officer would be aware. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In evaluating a claim of qualified immunity, the United States Supreme Court has directed that a reviewing court must first determine whether the facts alleged in support of civil rights claim demonstrate the violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

If the facts alleged would establish a constitutional violation if substantiated, a reviewing court must then determine whether it would have been clear to a reasonable officer at the time of the alleged violation that their actions were unlawful in the situation confronted. *Saucier*. The qualified immunity determination in this context is ordinarily a question that should be decided by the court, *Hunter v. Bryant*, 502 U.S. 224, 228 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). Likewise, in making this determination, the court should ask whether the government agent acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed after the fact. *Hunter* at 50 U.S. 224, 228.

A generally recognized constitutional right is "clearly established" for qualified immunity purposes within the context of a factually discreet claim if there is decisional authority directly on point, or when the application of previous cases to such facts is clearly foreseeable and apparent. *Blake v. Wright*, 179 F.3d 1003, 1007-08 (6th Cir. 1999). In this respect, a reviewing court must determine whether the plaintiff has offered sufficient evidence to indicate what the official allegedly did was "objectively unreasonable." See *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc).

In summary, the qualified immunity standard protects officers from civil liability so long as their conduct is reasonable, even if a reviewing court might otherwise find such conduct violative of a plaintiff's constitutional right: "Qualified immunity shields an officer from suit when [he] makes a decision that, even if constitutionally deficient, reasonable misapprehends the law governing the circumstances [he] confronted. Because the focus is on whether the officer had fair notice that [his] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." *Brosseau v. Haugen*, 543 U.S. 194, 198 125 S.Ct. 596, 599, 160 L.Ed.2d 583 (2004) . The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir.2007) (quoting *395 *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). "Through the use of qualified immunity, the law shields 'government officials performing discretionary functions ... from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.' "*O'Malley v. City of Flint*, 652 F.3d

13

662, 667 (6th Cir.2010). Once raised, the plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity. *Ciminillo v. Streicher,* 434 F.3d 461, 466 (6th Cir.2006).

In this case it is undisputed that Officer Bright responded to a citizen complaint received via 9-1-1 that a man matching the Plaintiff's description was observed on Rochelle Dr. carrying a firearm. As Officer Bright approached the Plaintiff and observed that the information provided by Allen Rose the 9-1-1 caller was accurate, it was not objectively unreasonable to detain Northrup under *Terry v. Ohio* due to the possibility that an armed person was threatening other persons in the neighborhood.

### 4. Officer Bright and Sergeant Rays' actions were objectively reasonable in Light of the clearly existing law.

#### a. Plaintiff's Second Amendment Rights were not clearly established at the time of the stop.

There was no clearly established law at the time of these alleged violations that would have informed Officer Bright or Sergeant Ray that stopping Plaintiff would potentially violate his Second Amendment rights. Plaintiff was stopped on June 16, 2010. It was not until June 28, 2010 that the U.S. Supreme Court held that the Second Amendment applied to the states as well as the federal government. *McDonald v City of Chicago, Illinois,* 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010). As it was not determined that the Second Amendment applied to the states until twelve days after Plaintiff's stop, this law was not "clearly established" for purposes of a qualified immunity analysis. *Bletz ex rel. Estate of Bletz v. Gribble,* 640 F.Supp.2d 907 (W.D.Mich. 2009), *Slough v. Telb,* 644 F. Supp.2d 978 (N.D.Ohio 2009).

Whether an action is reasonable in light of clearly established law depends on the law as established at the time the action was taken. *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct.808, 172 L.Ed.2d 565 (2009). No reasonable officer would have believed that his actions violated

14

Plaintiff's clearly established rights in light of the law at the time. As such, Officer Bright and Sergeant Ray are entitled to qualified immunity of Plaintiff's Second Amendment claim.

### b. The Officers acted reasonable in light of clearly established law with respect to investigatory stops.

At the time the officers stopped Plaintiff, they were aware that he was armed with a pistol. There are no allegations that Officer Bright possessed any specialized knowledge that Plaintiff was not a threat to his safety, the officer's safety or the safety of others. Given Plaintiff's location, the obvious possession of a firearm and the fact that someone had felt alarmed enough to call the police, the officer reasonably believed he had reasonable suspicion to conduct an investigatory stop. Had the officers ignored the police dispatch, they could have been exposed to liability had Plaintiff harmed someone or to discipline for ignoring a call to duty. The officers only detained Plaintiff as long as was necessary to conduct the investigation. Plaintiff admits that his firearms were returned at the end of the stop and that he was free to leave. A reasonable officer would believe that this brief, limited stop complied with the Fourth Amendment.

The decision to handcuff Plaintiff was reasonable in light of clearly established law and Plaintiff's obvious possession of at least one loaded firearm. *Campbell v. Stamper, supra.*

Both Officers acted reasonably under clearly established law in carrying out the stop of Plaintiff. As such, both officers are entitled to qualified immunity from Plaintiff's claims.

### c. Defendants acted reasonable in light of Plaintiff's First Amendment rights.

The individual Defendants are also immune from Plaintiff's First Amendment claims. Plaintiff makes no allegations that Defendants restricted his exercise of free speech. A plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating

factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir.2001). Plaintiff also makes no allegations that Defendants prevented him from engaging in free speech. The Defendants acted reasonably in light of the clearly established law. Plaintiff does not clarify how his right to symbolic speech was infringed. Plaintiff was only briefly stopped by the officers. He was not arrested. As there are no allegations to support Plaintiff's claim that Defendants prohibited him from engaging in symbolic speech, his First Amendment claims must be dismissed.

### 5. Officer Bright and Sergeant Ray are entitled to Qualified Immunity for Campbell's claim that he was injured as a result of being handcuffed.

The Plaintiff claims that he suffered injury to his wrists as a result of being handcuffed. Specifically, Northrup alleges that the handcuffs left marks on his wrists and his fingers were temporarily numb.(Northrup Depo., p.41).

Claims for injuries resulting from alleged excessively forceful handcuffing are evaluated under the Fourth Amendment. See *Burchett* v. *Kiefer*, 310 F.3d 937 (6th Cir. 2002). See also *Kostrzewa* v. *City of Troy*, 247 F.3d 633 (6th Cir. 2001). In order to state a viable Fourth Amendment claim, a plaintiff must allege that he complained to the officers that the handcuffs were too tight, and as a result of being left in handcuffs that were applied too tightly, the plaintiff incurred injury to his wrists. See *Meadows v. Thomas*, 117 Fed.Appx. 397, 405 (6th Cir. 2004). First, the evidence in this case demonstrates that neither Sergeant Ray nor Officer Comes handcuffed the Plaintiff. Accordingly, they are entitled to qualified immunity on this claim. With respect to Officer Bright, the evidence shows he loosened the cuffs immediately after Northrup complained about the tightness of the handcuffs.(Northrup Depo.,p.37). Further, Northrup admits that he never requested any medical assistance from Officer Bright during the incident.

(Northrup Depo., p. 42).

In *Gold v. City of Miami*, 121 F.3d 1442 (11th Cir. 1997) the court held that a police officer was entitled to qualified immunity on a handcuffing claim where the plaintiff alleged that he was left in excessively tight handcuffs for an unreasonable period of time and suffered skin abrasions. Likewise, in *O'Malley v. City of Flint, supra* at 671 the court found that an officer will be still be entitled to summary judgment based upon qualified immunity on a claim of excessive force if it would not be clear to a reasonable officer that he was violating the plaintiff's rights. See also *Wendt v. City of Kansas City, Kansas*, Civ.A.No.89-2463-0,1991 WL 49786 (D.Kan. 1991) (rejecting excessive force claim for handcuffing resulting in two minor cuts to plaintiff's wrists).

In summary, the Plaintiff has alleged no more than de minimis injury to his wrist and fingers associated with the normal discomforts of being handcuffed, as chaffing of the wrists occurs even when handcuffs are properly applied.(Ray Depo.pp.45-46)  In the context of a Fourth Amendment claim of excessive force, an injury must be more than a de minimis injury and must be evaluated in the context in which the force was deployed. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). In *Glenn*, the Fifth Circuit held as follows with respect to a claim of excessive handcuffing involving an alleged injury of a swollen wrist:

> "Other than placing the handcuffs on Glenn, according to Glenn's own testimony, Officer Rhodes did not touch her. Therefore, her sole contention is that the officer put the handcuffs on her too tightly, causing her right wrist to swell. This court finds that handcuffing too tightly, without more, does not amount to excessive force. There is no allegation here that Officer Rhodes acted with malice."

As in Glenn, the evidence taken in the light most favorable to Northrup demonstrates nothing more than the Plaintiff perhaps suffered minor cuts or abrasions to his writs and numb fingers based solely upon the lawful application of handcuffs during a justified Terry stop. This Court,

as the Fifth Circuit in *Glenn*, should conclude such facts insufficient to pursue an excessive force claim, and grant Officer Bright qualified immunity.

### 6. Plaintiff cannot maintain his *Monell* claim against the City as there is no underlying constitutional violation.

Plaintiff's Complaint seeks to impose liability on the City of Toledo for the alleged unconstitutional actions of the police officers. As argued above, Plaintiff's constitutional rights were not violated. Plaintiff cannot maintain his claim against the City in the absence of a constitutional violation. *Heller v. City of Los Angeles*, 475 U.S. 796, 799,106 S.Ct.1571, 89 L.Ed.2d 806 (1986). As such, the claims against the City must be dismissed. § 1983 does not impose liability on local governments under the principle of *respondeat superior;* a § 1983 plaintiff suing a governmental defendant must allege and prove the existence of a policy or custom of violating individuals' rights. See *Monell,* 436 U.S. 658, 98 S.Ct.2018, 56 L.Ed.2d 611 (1978)at 691–92, 98 S.Ct. at 2036–37; *Pembaur v. City of Cincinnati,* 475 U.S. 469, 477–81, 106 S.Ct. 1292, 1297–99, 89 L.Ed.2d 452 (1986). In the case at bar there is no proof of any municipal  policy or custom of arresting or detaining individuals without a reasonable suspicion that a crime has or will be committed.

### 7. The City of Toledo and the individual Defendants in their official capacities are immune from Plaintiff's State Law Claims.

The City of Toledo is a political subdivision within the meaning of O.R.C. §2744.01(F). As such, it is entitled to immunity from tort liability for governmental and proprietary functions. O.R.C. §2744.02(A)(1). The individual Defendants, in their official capacities, are also entitled to the protections set for in O.R.C. §2744.02. *Lambert v. Clancy*, 125 Ohio St.3d 231(2010).

O.R.C. §2744.02 (A)(1) provides immunity to political subdivisions from damages for injury, death or loss to person or property:

18

> For the purposes of this Chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a government or proprietary function.

The general rule, as stated in O.R.C. §2744.02(A)(1), is that a political subdivision is not liable in damages. *Hubbard v. Canton City School Bd. Of Educ.* 97 Ohio St.3d 451,(2002) ¶10. The only exceptions to this general grant of immunity are the five exceptions set forth in O.R.C. §2744.02(B). *Hill v. Urbana*, 79 Ohio St.3d 130, 133 (1997). Once immunity has been established under O.R.C. §2744.02(A)(1), the analysis becomes whether any of the exceptions to immunity set forth in subsection (B) apply. If none of the exceptions contained in O.R.C. §2744.02(B) apply, the analysis ends and the political subdivisions is immune from liability. See *Cater v. City of Cleveland* 83 Ohio St.3d 24, 28 (1998); *Lambert v. Clancy supra*; *S.H.A.R.K. v Metro Parks Serving Summit County* 9th Dist. No. 24443, 2009-Ohio-3004, (June 24, 2009) ¶17.

The provision for police services is a governmental function under R.C.§ 2744.01(C)(2)(a) R.C.§ 2744.03(A)(6)(b) grants police officers immunity for any conduct they engage in within the scope and course of their employment unless their conduct was done maliciously, in bad faith, or in a wanton or reckless manner. In the case *sub judice,* there simply is no reference or any argument presented that the officers acted recklessly and/or maliciously caused any injuries suffered by Plaintiff. Plaintiff has not established any constitutional violation relative to the officers and therefore the case is only properly examined in the light of the tort of false imprisonment, false arrest or malicious prosecution as broadly construed in Plaintiff's Complaint. There is no cognizable claim for false arrest here as there was lawful justification for it. See *Evans v. Smith,* 97 Ohio App.3d 59, 70(1st Dist.1994) "to succeed in a claim of false arrest or imprisonment, a plaintiff must establish that defendants are without legal authority to

19

arrest and detain him and that the detention was not accomplished pursuant to accepted legal procedures." *Krantz v. City of Toledo Police Dept.*, 365 F.Supp.2d 832, 837(N.D.Ohio,2005) citing *McFinley v. Bethesda Oak Hosp,*79 Ohio App.3d 613, 616(1ˢᵗ Dist.1992). Additionally, as indicated above, the immunity statute requires that any cause brought against a police officer be shown to have occurred with conduct which is much greater than negligence. Officer Bright's decision to charge the Plaintiff with Failure to Provide Personal Information was made after consultation with a superior officer and a detective. The fact that a city prosecutor later chose to dismiss the charge was an outcome that the officer had no control over and could not have foreseen.

As Toledo and the individual Defendants in their official capacities are immune from liability arising out of the performance of a governmental function, they are immune from Plaintiff's state law claims.

## IV.     CONCLUSION

The City of Toledo and its police officers are entitled to judgment in this case as a matter of law because there is no genuine issue of material fact. The Plaintiff's decision to openly carry a handgun on a City of Toledo Street resulted in a 9-1-1 emergency call to the Toledo Police Department of a man with a gun. Officer David Bright was dispatched to investigate and observed the Plaintiff on Rochelle Drive carrying a firearm as described. The officer's thirty-six minute detention of the Plaintiff was made to identify the Plaintiff and determine if he was under any legal impediment prohibiting the possession of a firearm. The Plaintiff was placed in handcuffs only after Officer Bright became concerned for his own safety. At the completion of the investigation the Plaintiff was released and his gun returned to him. He was charged by

summons with a misdemeanor offense of Failure to Disclose Personal Information. This charge was eventually dismissed on the motion of a Toledo City Prosecutor.

The actions of the Toledo Police officers in this case were reasonable in light of clearly established law and fall far short of willful, wanton or malicious conduct. The decision of Officer Bright to conduct an investigatory stop was necessary to ascertain the intentions of the Plaintiff and whether he was lawfully permitted to posses a firearm. The criminal charge brought against the Plaintiff was filed in good faith and only after the officer had made efforts to determine what charge, if any, was appropriate. For these reasons the Defendants move for judgment in their favor.

Respectfully submitted,

ADAM W. LOUKX, DIRECTOR OF LAW

/s/___John_T. Madigan_____
John T. Madigan, Senior Attorney
Counsel for Defendants

## V.     <u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the foregoing motion for summary judgment and memorandum was sent by regular U.S. mail and electronically to Daniel T. Ellis, Esq., attorney for Plaintiff at: LYDY & MOAN, LTD. 4930 N. Holland-Sylvania Rd, Sylvania, Ohio 43560 this 29th day of January, 2014.

/s/___John T. Madigan_____
John T. Madigan, Senior Attorney
