IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Shawn C. Northrup, | ) | Case No.:  3:12-CV-01544 |
| | ) | |
| Plaintiff, | ) | Judge:  Jeffrey J. Helmick |
| | ) | |
| v. | ) | **SHAWN NORTHRUP'S** |
| | ) | **MEMORANDUM IN** |
| City of Toledo, et al., | ) | **OPPOSITION TO DEFENDANTS'** |
| | ) | **MOTION FOR SUMMARY** |
| Defendants. | ) | **JUDGMENT** |
| | ) | |
| . | ) | [Daniel T. Ellis     (0038555)] |
| | ) | |
| | ) | LYDY & MOAN, LTD. |
| | ) | 4930 N. Holland-Sylvania Road |
| | ) | Sylvania, OH 43560-2149 |
| | ) | Direct Dial:      419-517-7741 |
| | ) | Telephone:      419-882-7100 |
| | ) | Facsimile:      419-882-7201 |

Now comes, Shawn C. Northrup, through Counsel, responds to Defendants' Motion for Summary Judgment on the basis that the material facts demonstrate the Defendants, under the color of law, violated Shawn Northrup's constitutional rights to bear arms, express symbolic speech and to be free from unreasonable searches and seizures, used excessive force, intentionally injured him, fabricated a criminal violation to cover up their misconduct and are not entitled to statutory immunity for their malicious and unlawful conduct.  The undisputed facts clearly demonstrate that Mr. Northrup was engaged in lawful conduct walking down the street with his wife, two children and a dog, openly carrying a firearm secured and holstered when the Toledo Police, without any articulable facts indicating reasonable suspicion that a crime has been committed, stopped him, threatened him with deadly force, detained him, arrested him, and

falsely charged him.  The police officers involved acted without authority and had no probable

cause to stop, question, detain or arrest Mr. Northrup and did so in complete disregard of any

constitutional standard that would grant them statutory immunity and their motion should be

denied.

> Respecively submitted,
>
> /s/ Daniel T. Ellis
> Daniel T. Ellis (0038555)
>
> Lydy & Moan, Ltd.
> The Pacesetter Building
> 4930 Holland-Sylvania Road
> Sylvania, OH 43560-2149
> Telephone: (419) 882-7100
> Facsimile: (419) 882-7201
> E-mail: dellis@lydymoan.com
>
> Attorney for Plaintiff
> Shawn Northrup

## CERTIFICATE OF SERVICE

This is to certify that Shawn Northrup's Memorandum in Opposition to Defendants'

Motion for Summary Judgment was filed electronically with the Court on April 1, 2014.  Notice

of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

> By:    /s/ Daniel T. Ellis
>        Daniel T. Ellis          (0038555)
>
>        LYDY & MOAN, Ltd.
>        4930 N. Holland-Sylvania Rd.
>        Sylvania, OH  43560
>        Telephone:    (419) 882-7100
>        Facsimile:    (419) 882-7201
>        Email:  dellis@lydymoan.com

## <u>TABLE OF CONTENTS</u>

I.    Table of Authorities ……………………..…………………..…. **iv**

II.   Issues Presented...…………………………..…………………...**1**

III.  Summary of Argument…………………………………...…….**1**

    1.  Argument Summary…………………………………...………**1**

    2.  Statement of Facts …………………………………........................**2**

    3.  Law and Discussion …………………………………….......**7**

      A. Toledo Police Officers Violated Shawn Northrup's First Amendment Right to Express Symbolic Speech and Second Amendment Right to Bear Arms for Defense and Security When They Stopped Him for Lawfully Carrying a Holstered Firearm in the Open While Walking His Dog with His Family and Arrested Him………………………..…...…**7**

      B. Officer Bright Violated Mr. Northrup's Fourth Amendment Right to be Secure in His Person Against Unreasonable Searches and Seizures …………………………………………………………..**11**

      C. Officer Bright's Actions, In Concert with Other Members of The Toledo Police Department, In The Arrest of Mr. Northrup Violated Clearly Established Federal and State Laws and Therefore the Defendants are not Entitled to Qualified Immunity……………..........................................**19**

      D. The Facts Establish the Toledo Police Officers are Not Entitled to Statutory Immunity Under R.C. § 2744.03 Because They Engaged in Malicious Conduct, Bad Faith, in a Wanton and Reckless Manner by Intentionally Arresting, Detaining, and Asserting Excessive Force and Asserting a Sham Legal Process, Interfering with Mr. Northrup's Civil Rights …………………………………………………………..**23**

      E. Officer Bright Violated Mr. Northrup's Fourth Amendment Rights When He Handcuffed Him in an Unduly Tight Manner………………………**26**

      F. Officer Bright, Sergeant Ray and the Detective Bureau Acted Pursuant to a Long Standing Policy of Formulating Charges Against Law Abiding Individuals After Violating Constitutional Rights………………...**27**

IV.    Conclusion …………………………………………………………...29
V.     Certification ………………………………………………………..29

I.      **TABLE OF AUTHORITIES**

**CASES**

*Arnold v. Cleveland*, 67 Ohio St.3d 35, 616 N.E.2d 163 (1993) ............................................**9-10**

*Atkins v. Lanning*, 556 F.2d 485 (10th Cir.1977) ...........................................................**20**

*Avery v. King*, 110 F.3d 12, 1997 Fed.App. 0107P (6th Cir.1997) ...............................................**19**

*Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 39 A.L.R. 790,
69 L.Ed. 543 (U.S. 1925).................................................................................**21**

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.E.2d 265, 54 USLW 4775,
4 Fed.R.Serv.3d 1024 (U.S.Dist.Col.,1986) .........................................................**11**

*Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (U.S.Del.,1979) .................**14**

*Dietrich v. Burrows*, 976 F.Supp. 1099 (N.D.Ohio,1997).......................................................**19-21**

*District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637, 76 USLW 4361,
08 Cal. Daily Op. Serv. 8060, 2008 Daily Journal D.A.R. 9613,
21 Fla. L. Weekly Fed. S 497 (2008).........................................................................**10**

*Fettes v. Hendershot*, 375 Fed.Appx. 528, 2010 WL 1687727 (C.A. 6 (Ohio)) .........................**27**

*Florida v. J.L.*, 529 U.S. 266, 120 S.ct. 1375, 146 L.Ed.2d 254, 68 USLW 4236, 00 Cal. Daily
Op. Serv. 2409, 2000 Daily Journal D.A.R. 3223, 2000 CJ C.A.R. 1642,
13 Fla. L. Weekly Fed. S 216 (2000)........................................................................**13**

*Jeffers v. Heavrin*, 12 F.3d 380 (6th Cir.1993)........................................................................**20**

*Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (U.S.Dist.Col.,1982)..**19, 22**

*Klein v. Leis*, 99 Ohio St.3d 537, 795 N.E.2d 633, 2003 –Ohio- 4779 (Ohio,2003)................**9-10**

*Maryland v. Pringle*, 540 U.S. 366, 124 S.Ct. 795, 157 L.Ed.2d 769, 72 USLW 4103, 03 Cal.
Daily Op. Serv. 10,763, 2003 Daily Journal D.A.R. 13,581,
17 Fla. L. Weekly Fed. S 83 (U.S.Md.,2003) ............................................................**15**

*McDonald v. City of Chicago, Ill.*, 130 S.Ct. 3020, 177 L.Ed.2d 894, 78 USLW 4844, 10 Cal.
Daily Op. Serv. 8030, 2010 Daily Journal D.A.R. 9899, 22 Fla. L. Weekly Fed. S 619 (2010) ..**10**

*McGowan v. State*, Slip Copy, 2013 WL 5310473 (Tenn.Crim.App.,2013) ...............................**10**

*Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 17 Fair Empl.Prac.Cas. (BNA) 873, 16 Empl. Prac. Dec. P 8345, 56 L.Ed.2d 611 (1978) ..............**28**

*Ornelas v. U.S.*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911, 64 USLW 4373, 96 Cal. Daily Op. Serv. 3744, 96 Daily Journal D.A.R. 6059 (U.S.Wis.,1996) ...................................**15**

*Oung v. State*, Slip Copy, 2011 WL 6382546 (Tenn.Crim.App.,2011) ........................**10**

*Painter v. Robertson*, 185 F.3d 557, 1999 Fed.App. 0259P (6th Cir.1999) ..................**15**

*Pray v. City of Sandusky*, 49 F.3d 1154, 1995 Fed.App. 0100P (6th Cir.1995)............**20**

*Shevlin v. Cheatham*, 211 F.Supp.2d 963 (S.D.Ohio, 2002) ..................................**15, 26**

*State v. Darrah*, 64 Ohio St.2d 22, 412 N.E.2d 1328, 18 O.O.3d 193 (Ohio, 1980)....................**15**

*State v. Hogan*, 52 L.R.A. 863, 63 Ohio St. 202, 48 W.L.B. 303, 58 N.S. 572, 81 Am.St.Rep. 626 (Ohio 1900) ........................................................................**9**

*State v. Lewis*, 19 L.R.A. 449, 50 Ohio St. 179, 29 W.L.B. 180, 33 N.E. 405 (Ohio 1893) .........**21**

*State v. Mathews*, 46 Ohio St.2d 72, 346 N.E.2d 151, 75 O.O.2d 150 (Ohio 1976) ....................**21**

*Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.E.2d 334, 57 USLW 4233 (U.S.Ill.,1989)........................................................................**10**

*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, 44 O.O.2d 383 (U.S.Ohio 1968) **12, 14**

*Texas v. Johnson*, 491 U.S. 397, 109 S.Ct. 2533, 105 L.E.2d 342, 57 USLW 4770 (1989) ..........**7**

*U.S. v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (U.S.Ariz.,1981) ................... **11-14**

*U.S. v. Harris*, 255 F.3d 288, 2001 Fed.App. 0201P (6th Cir.2001) ..............................**15**

**STATUTES**

O.R.C. § 2744.03 .........................................................................................**23, 25, 26**

O.R.C. § 2917.31 .............................................................................................**16, 22**

O.R.C. § 2921.29 ...........................................................................**6, 17-18, 22-23, 24**

O.R.C. § 2921.52 .........................................................................................**24-25, 28**

O.R.C. § 2923.11 .........................................................................................................**9**

O.R.C. § 2935.07 ........................................................................................................**22**

O.R.C. Chapter 9.68 .................................................................................................**8-9**

The Ohio Constitution, § 1.01 ................................................................................**8**

The Ohio Constitution, § 1.04...................................................................................................**8**

42 U.S.C. §1983.....................................................................................................................**11**

## II.    ISSUES PRESENTED

1.  Whether the stop and arrest of Mr. Northrup were justified by reasonable suspicion and probable cause based upon information received from an anonymous caller and Officer Bright's observations.

2.  Whether the Toledo Police had a reasonable belief they had probable cause to arrest Mr. Northrup permitting the application of qualified immunity to bar Mr. Northrup's claims.

3.  Whether the right of an individual to bear arms in the State of Ohio was clearly established on June 16, 2010 such that qualified immunity should not apply to bar Mr. Northrup's claims under the Second Amendment of the United States Constitution and Article 1, Sections 1 and 4 of the Ohio State Constitution.

4.  Whether the actions of the Toledo Police constituted a sham legal process such that they are not entitled to State statutory immunity from Mr. Northrup's state law claims.

## III.   SUMMARY OF ARGUMENT

### 1.   ARGUMENT SUMMARY

Shawn Northrup filed a complaint against the City of Toledo, Toledo Police, and Toledo police officers David Bright, Donald Comes and Sergeant Daniel Ray on the basis of their conduct in unreasonably searching and seizing his person secured by the Fourth Amendment to the Constitution of the United States; deprivation of his right to express symbolic speech by openly carrying a holstered firearm secured by the First Amendment to the Constitution of the United States; deprivation of his right to bear arms secured by the Second Amendment to the Constitution of the United States and Article 1, Sections 1 and 4 of the Constitution of Ohio; deprivation of his Liberty without Due Process of Law; sham legal process; assault and battery; false arrest and malicious prosecution.

The complaint arose out of the of unlawful detention, seizure and arrest of Mr. Northrup by Toledo Police officers on June 16, 2010 while he was walking his family dog with his wife, daughter and grandchild, openly carrying a holstered and secured firearm in a non-threatening

1

manner and The Toledo Police Department's attempt to cover-up their officers' unlawful conduct by falsely charging him with criminal activity without any factual basis.  Mr. Northrup was engaged in lawful conduct and had not committed any crime and was not about to commit any crime.  When the officer stopped and questioned Mr. Northrup, the officer did not have any articulable facts indicating reasonable suspicion that a crime had been committed or was about to be committed by Mr. Northrup.  The Toledo Police detained him, searched him, threatened him, arrested him, and after figuring out that he was engaged in lawful conduct, falsely charged Mr. Northrup to cover up their arrest without probable cause.

The officers involved and the City of Toledo engaged in wrongful conduct, violated Mr. Northrup's constitutional rights, and intentionally and maliciously trumped up charges they knew were false overcoming any claim of statutory immunity by the Defendants because their actions were intentional, willful, wanton and malicious, and constituted a sham legal process.

## 2.  <u>STATEMENT OF FACTS</u>

On June 16, 2010, Shawn and Denise Northrup decided to take a leisurely walk in their neighborhood with their daughter, grandson and a Yorkie dog (Deposition transcript of Shawn C. Northrup, pg. 7, LL 14-25 ("Northrup Depo.") and Exhibit C, Affidavit of Denise Northrup, pg. 1, ¶ 4).  They had been taking these walks regularly since early spring, dozens and dozens of times (Northrup Depo., pg. 10, LL 20-24).  Mr. Northrup openly carried a holstered firearm in full compliance with all state and federal laws while walking with his family (Northrup Depo., pg. 8, LL 20-25).  Mr. Northrup always carries a firearm for the security of his family and to educate the public that firearms are not dangerous (Northrup Depo., pg. 9, LL 3-11).

As the Northrup family proceeded down the street and approached the intersection of Dulton and Rochelle, they noticed a man on a motorcycle (Northrup Depo., pg. 27, LL 18-25,

pg. 28, LL 1-7 and Exhibit C, Affidavit of Denise Northrup, pg. 2, ¶ 6). The person on the motorcycle was Alan Rose (Northrup Depo., pg. 26, LL 21-24). Mr. Rose started yelling to the Northrup family that "you can't do that, you can't walk around with a gun like that" (Northrup Depo., pg. 28, LL 16-19). The Northrups responded that "open carry is legal in Ohio and they were not doing anything wrong" (Northrup Depo., pg. 28, LL 20-23). The Northrup family continued on their walk and Mr. Rose kept yelling "you can't do that" and being belligerent (Northrup Depo., pg. 29, LL 1-11). As Mrs. Northrup continued to try and explain that open carry was permissible, Mr. Northrup said to his wife, "honey listen, this guy is being aggressive, he's following us, let's just keep moving, let's mind our own business; you are not going to explain things to him or change his mind in any way" (Northrup Depo., pg. 99, LL 7-11). The Northrup family continued their walk (Northrup Depo., pg. 29, LL 16-17).

After about eight minutes, as the Northrup family continued on their normal walk, a Toledo Police car drove up behind them (Northrup Depo., pg. 31, LL 14-20 and Exhibit C, Affidavit of Denise Northrup, pg. 2, ¶ 8). As the Northrup family walked, their children would ride their bikes past a couple of houses, then turn around and ride back. As his daughter was riding toward them, she said, "Daddy, there's a police car coming down the street" (Northrup Depo., pg. 32, LL 3-6). Mr. Northrup got out his cell phone and started recording and shortly thereafter he heard, "excuse me, can you turn around" (Northrup Depo., pg. 32, LL 16-22). Mr. Northrup had his cell phone in his left hand and the dog leash in his right hand (Northrup Depo., pg. 33, LL 5-9).

Officer Bright testified that he understood as early as 2003 that private citizens were permitted to openly carry a firearm in Ohio (Deposition of Officer Bright ("Bright Depo."), pg. 20, LL 7-25, pg. 50, LL 3-5 and pg. 98, LL 22-23). Prior to stopping Mr. Northrup, Officer

Bright admits he had an opportunity to observe Mr. Northrup walking down the street with his family and did not observe any articulable facts indicating reasonable suspicion that Mr. Northrup had committed or was about to commit a crime justifying a stop  (Bright Depo., pg. 36, LL 9-24).   Moreover, he would not have stopped or questioned Mr. Northrup because he understood that "open carry" is permissible in Ohio, and understood that without reasonable suspicion or probable cause, he had no authority to stop, detain, question, or conduct an investigation of criminal activity (Bright Depo., pg. 25, LL 12-16, pg. 26, LL 2-4 and 22-25, pg. 28, LL 2-4).

In spite of what Officer Bright observed and his understanding of the law, he approached the Northrup family and asked Mr. Northrup to identify himself, which Mr. Northrup did verbally by stating his name and address.  As the police officer walked closer, he had his hand on his firearm and he told Mr. Northrup that he was going to remove his firearm from its holster, and if Mr. Northrup went for his firearm he was going to shoot him (Northrup Depo., pg. 33, LL 10-15 and Exhibit C, Affidavit of Denise Northrup, pg. 2, ¶ 9).   Officer Bright directed Mr. Northrup to hand the dog leash to his wife, turn around and put his hands up (Northrup Depo., pg. 33, LL 15-21 and Exhibit C, Affidavit of Denise Northrup, pg. 2, ¶ 9).  Mr. Northrup assured the police officer verbally that he would not be touching his firearm (Exhibit C, Affidavit of Denise Northrup, pg. 2, ¶ 9).  Officer Bright removed Mr. Northrup's firearm from its holster (Northrup Depo., pg. 9, LL 3-11).

Officer Bright asked Mr. Northrup if he had his driver's license and asked to see it (Northrup Depo., pg. 34, LL 1-4).  Mr. Northrup asked permission to get out his wallet and gave Officer Bright his driver's license (Northrup Depo., pg. 34, LL 3-10 and Exhibit C, Affidavit of Denise Northrup, pgs. 2-3, ¶ 10).  Officer Bright only had to ask once for Mr. Northrup to give

4

his driver's license (Northrup Depo., pg. 34, LL 9-11 and Exhibit C, Affidavit of Denise Northrup, pgs. 2-3, ¶ 10).

While Mr. Northrup was getting his license, Mrs. Northrup asked what was going on and Officer Bright would only say they had received a call (Exhibit C, Affidavit of Denise Northrup, pg. 2, ¶ 12). Mr. Northrup asked what was going on and Officer Bright stated "he was conducting an investigation and he would let him know as soon as he figured things out" (Northrup Depo., pg. 35, LL 9-10).

Officer Bright asked Mr. Northrup if he had a concealed carry permit, to which Mr. Northrup asked if he was "under arrest, am I free to go" (Northrup Depo., pg. 35, LL 18-21). Officer Bright did not answer and kept asking questions in a forceful and really aggressive manner inquiring whether Mr. Northrup had a concealed carry license (Northrup Depo., pg. 35, LL 22-25). Officer Bright turned to Mrs. Northrup and asked her if Mr. Northrup had a concealed carry permit. She responded by stating that Officer Bright had her husband's driver's license and "you can check for yourself" (Northrup Depo., pg. 36, LL 3-7 and Exhibit C, Affidavit of Denise Northrup, pg. 4, ¶ 22).

At this point, Officer Bright told Mr. Northrup that he could arrest him for inducing panic right now (Northrup Depo., pg. 36, LL 8-11). Mr. Northrup responded by stating he had "nothing further to say, am I free to go" (Northrup Depo., pg. 36, LL 10-11). Officer Bright turned to Mrs. Northrup and stated, "I'll take him to jail, he'll spend the night in jail tonight. Do you want your husband to go to jail?" (Northrup Depo., pg. 36, LL 11-15) Officer Bright turned back to Mr. Northrup and told him he would take him to jail, saying, "I will arrest you for inducing panic." Mr. Northrup responded by asking if he was, "free to go." Officer Bright said,

"Ok, you are under arrest, turn around, put your hands behind your back" (Northrup Depo., pg. 36, LL 16-25).

Officer Bright proceeded to handcuff Mr. Northrup very tightly and Mr. Northrup asked for the handcuffs to be loosened.  Officer Bright did something to the handcuffs, as he stated that he loosened them, but Mr. Northrup again told him they were still too tight (Northrup Depo., pg. 37, LL 1-4).  Mr. Northrup was then placed in the back of the police cruiser (Northrup Depo., pg. 37, LL 11-17).  A second police car (Sergeant Ray) then pulled up to the scene.

After Mr. Northrup was put in the back seat of the police cruiser, Officer Bright proceeded to question Mrs. Northrup in a combative and intimidating manner in front of the children (Exhibit C, Affidavit of Denise Northrup, pg. 4, ¶ 19).  Officer Bright said Mr. Northrup was "being a jerk" and stated that if Mr. Northrup had just shown his concealed carry license, this whole situation would have been over in 30 seconds (Exhibit C, Affidavit of Denise Northrup, pg. 4, ¶ 19).

While Mr. Northrup was in the back seat of the police cruiser, Officers Ray and Comes arrived at the scene.  Officer Bright and Sergeant Ray talked, referred to a notebook and had an extended conversation with the Detectives regarding how to charge Mr. Northrup.  Mr. Northrup was confined to the back seat of the police cruiser, handcuffed for 30 to 40 minutes (Northrup Depo., pg. 39, LL 24-25).  Eventually, Mr. Northrup was issued a citation for failure to disclose personal information, R.C. § 2921.29(A)(1) because he refused to tell Officer Bright whether he had a concealed carry license (Exhibit F at 1:45, Shawn Northrup's recording).  This citation was not applicable to the situation and the Toledo Police falsely charged Mr. Northrup, knowing that he had fully complied with the officer's questions insofar as he was required by the law.  There was absolutely no legal basis to charge Mr. Northrup.  Mr. Northrup verbally provided Officer

6

Bright with his name and address when asked, and also gave the officer his driver's license. The charges against Mr. Northrup were false when made.

After retaining an attorney and appearing in Court multiple times, the charges were summarily dismissed by the prosecutor when he learned that Mr. Northrup had provided his driver's license (Exhibit A, Court Docket).

Since Officer Bright arrested Mr. Northrup, he has not openly carried a firearm (Northrup Depo., pg. 44, LL 3-13).

### 3. LAW AND DISCUSSION

**A. Toledo Police Officers Violated Shawn Northrup's First Amendment Right to Express Symbolic Speech and Second Amendment Right to Bear Arms For Defense and Security When They Stopped Him For Lawfully Carrying a Holstered and Secured Firearm in the Open While Walking His Dog with His Family and Arrested Him.**

Shawn Northrup's conduct in lawfully carrying a holstered and secured firearm while walking his dog with his family was speech governed and protected by the First Amendment to the United States Constitution. The United States Supreme Court set the standard for what conduct constitutes expression protected by the First Amendment in *Texas v. Johnson*, 491 U.S. 397, 109 S.Ct. 2533 (1989). The Court's analysis focused upon "whether [a]n intent to convey a particularized message was present and [whether] the likelihood was great that the message would be understood by those who viewed it." Id. At 404, 109 S.Ct. 2533. Mr. Northrup openly carried a holstered firearm for the security of his family and to educate the public that firearms are not dangerous and that open carry was permissible in Ohio (Northrup Depo., pg. 9, LL 3-11 and pg. 28, LL 20-23).

The genesis of the anonymous call to 911 was the Northrup's attempt to educate the caller that open carry was permissible in Ohio. Officer Comes, who interviewed the 911 caller

7

after Mr. Northrup was arrested for inducing panic, testified that the caller told him: "A guy's walking down the street with a gun.  I told him he's not allowed to do that. … He told [me] that he is allowed to do that and the caller insisted he could not" (Deposition of Officer Comes, pg. 29, LL 3-22 and pg. 30, LL 16-24).   After the 911 caller continued to yell, including vulgarities, and Mrs. Northrup continued to try and explain that open carry was permissible, the Northrups disengaged from the conversation and continued their walk.  As illustrated by these undisputed facts, Mr. Northrup had openly conveyed his intended message to the public in an obvious manner, thus entitling him to First Amendment protection.

Moreover, the right to bear arms has been firmly entrenched in Ohio, as it has been embodied in its Constitution since 1851:

> All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety.

> The Ohio Constitution, § 1.01 Inalienable Rights (1851)

> The people have the right to bear arms for their defense and security; but standing armies, in time of peace, are dangerous to liberty, and shall not be kept up; and the military shall be in strict subordination to the civil power.

> The Ohio Constitution, § 1.04 Bearing arms; standing armies; military powers (1851)

> The Ohio General Assembly further recognized an individual's inalienable right to bear

arms when it enacted Chapter 9.68 of the Ohio Revised Code.  It states:

> (A) The individual right to keep and bear arms, being a fundamental individual right that predates the United States Constitution and Ohio Constitution, and being a constitutionally protected right in every part of Ohio, the general assembly finds the need to provide uniform laws throughout the state regulating the ownership, possession, purchase, other acquisition, transport, storage, carrying, sale, or other transfer of firearms, their components, and their ammunition. Except as specifically provided by the United States Constitution, Ohio Constitution, state law, or federal law, **a person, without further license, permission, restriction, delay, or process, may own, possess, purchase, sell, transfer, transport, store, or keep any firearm, part of a firearm, its components, and its ammunition.**

8

\*\*\*

(C) As used in this section:

(1) **The possession, transporting, or carrying of firearms, their components, or their ammunition include, but are not limited to, the possession, transporting, or carrying, openly or concealed on a person's person or concealed ready at hand, of firearms, their components, or their ammunition.**

(2) "Firearm" has the same meaning as in section 2923.11 of the Revised Code.

\*\*\*

Ohio Revised Code, Chapter 9.68, Effective Date: 03-14-2007, emphasis added.

The Ohio Supreme Court recognized a person's right to carry a firearm for any lawful purpose in *State v. Hogan*, (1900), 63 Ohio St. 202, 218-219: "A man may carry a gun for any lawful purpose, for business or amusement, but he cannot go about with that or any other dangerous weapon to terrify and alarm a peaceful people."  Mr. Northrup lawfully carried his firearm in a safe, unconcealed and non-offensive manner.  Mr. Alan Rose testified that Mr. Northrup had not done anything suspicious, he never felt threatened, and that Mr. Northrup had never touched his firearm (Deposition of Alan Rose, pg. 25, LL 4-6, 25, and pg. 26, LL 24-25 and pg. 28, LL 1-8; see also Deposition of Officer Comes pg. 31, LL 11-15).  In fact, Mr. Rose told the 911 operator: "I am not going to call a crew if it is legal to carry out in the open" (Deposition of Alan Rose, pg. 21, 3-9 and Exhibit D, Audio Recording of Alan Rose's Call to 911).

The right to bear arms for defense and security provided by the Ohio Constitution is a fundamental individual right.  *Arnold v. Cleveland* (1993), 67 Ohio St.3d 35, 616 N.E.2d 163, paragraph two of the Syllabus.   The Ohio Supreme Court reemphasized the right to bear arms in *Klein v. Leis*, (2003), 99 Ohio St. 3d 537, at 541, 795 N.E.2d 633, at 638 where it upheld the concealed carry statute in Ohio stating it did not unconstitutionally infringe on the right to bear

9

arms because there is no constitutional right to bear concealed weapons.  The statute left open the alternative method to bear arms by openly carrying a firearm.  *Arnold v. Cleveland*, at page 543, 649, O'Conner Dissent.  The constitutionally protected method to carry a firearm in Ohio without a license is open carry and if you wish to carry a concealed firearm you need to obtain a concealed carry license.

Additionally, the Second Amendment to the United States Constitution secures to the people the right to keep and bear arms (United States Constitution, Second Amendment).  The Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783 (2008) held that the Second Amendment protects the right to keep and bear arms for the purpose of self-defense.  In *McDonald v. City of Chicago, Illinois* 130 S.Ct. 3020 (2010), the Court held that the Second Amendment right to keep and bear arms is fully applicable to the States by virtue of the Fourteenth Amendment.  Defendants' assert that this decision was issued twelve days after the arrest of Mr. Northrup, therefore, the Officer did not possess the knowledge that stopping Mr. Northrup without any lawful basis would result in a Constitutional violation (Defendants' brief, pg. 7).

To determine whether a case establishes a new right for constitutional purposes for retroactive application, the test is whether "it breaks new ground or imposes a new obligation on the States or the Federal Government," or whether it "was not dictated by precedent existing at the time of defendant's conviction becoming final."  *McGowan v. State* 2013 WL 5310473 (Tenn.Crim.App), citing, *Oung v. State*, Nor. M2010-02076-CCA-R3-PC, 2011 WL 6382546, at *2 (quoting *Teague v. Lane*, 489 U.S. 288, 301 (1989)).  At the time of the stop, the *Heller* decision had established that individuals had the right to bear arms and the officers understood this right applied to the individual, pursuant to the Ohio and Federal Constitutions.

10

Officer Bright and Officer Comes testified that they understood "open carry" was constitutionally permissible in Ohio as early as 2003. (Bright Depo., pg. 20, LL 7-25, pg. 50, LL 3-5 and pg. 98, LL 22-23l; Deposition of Officer Comes, pg. 25 and pg. 26, LL 2-8; and see also, Deposition of Officer Ray, pg. 18, LL 15-25 indicating on day of stop he knew open carry was permissible). Officer Bright acknowledged that openly carrying a firearm would not create sufficient reasonable suspicion or probable cause to stop and talk with Mr. Northrup (Bright Depo., pg. 98, LL 24-25 and pg. 99, LL 1-2).

It is clear that the Toledo Police violated Mr. Northrup's First Amendment Right to expressive conduct through symbolic speech and to educate the public about open carry and firearms. Moreover, the pretext for the stop was not based upon any articulable suspicion that Mr. Northrup had engaged in criminal conduct or was about to engage in criminal conduct when he lawfully and openly carried a firearm, but was based upon constitutional violations, interfering with his right to bear arms and right to free speech. Pursuant to 42 U.S.C. § 1983, the Toledo Police are liable for their wrongful conduct.

### B. Officer Bright Violated Mr. Northrup's Fourth Amendment Right to be Secure In His Person Against Unreasonable Searches and Seizures.

While the standard for summary judgment requires a demonstration of the absence of a genuine issue of material fact. *Celotex Corp v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.ED.2d 265 (1986). In the instant case, the facts as asserted by the Defendants, even if uncontested, establish that Mr. Northrup's rights protecting him from unreasonable search and seizure were violated.

The standard regarding the authority of a police officer to detain a person for purposes of investigation is set forth in Supreme Court decisions. In *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981) the Court held:

[d]etaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity . . . . the evidence collected must be weighed as understood by those versed in the field of law enforcement . . . [a]lso, the process must raise suspicion that the particular individual being stopped is engaged in wrongdoing." *Id.* at 411-12.

In *Terry v. Ohio* 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1880 (U.S.Ohio 1968) the Court stated:

And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. . . [a]nd in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate? . . . [a]nything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction.

Reviewing the specific, articulable facts of which Defendants were aware at the time Officer Bright stopped Mr. Northrup, as set forth by the Defendants in their brief and deposition testimony, reveals:

Officer Bright received a dispatch call stating "an anonymous caller, white male, walking his dog on Rochelle, carrying a handgun" (Exhibit E, Audio Recording of Dispatch to Responding Officers; Exhibit B, Police Report; Bright Deposition, pg. 34, LL 1-15, pg. 35, LL 1-8, pg. 35, LL 15-25, and pg. 36, LL 1-6). Officer Bright's recollection of the dispatch call conforms to the statement in Defendants' brief that "[a]t 5:10 P.M. on the afternoon of June 16, 2010, the City of Toledo Police Department received a telephone call from Allen [sic] Rose who reported a white male walking his dog on Rochelle Rd. was carrying a hand gun out in the open" (Defendants' brief, pg. 2). The caller did not identify himself as Alan Rose at that time, (see Exhibit D, Audio Recording of Alan Rose's Call to 911) but instead remained anonymous, until after Mr. Northrup had been handcuffed and placed in Officer Bright's patrol car. At that point,

12

Officer Comes called the phone number that had placed the 911 call and spoke to a Mr. Alan Rose (Comes Depo., pg. 34, LL 3-25).

Officer Bright observed Mr. Northrup walking on Hayes Street with his wife, two children, and a dog and observed that Mr. Northrup was wearing a pistol on his hip in a holster (Defendants' brief, pg. 3).

The above encompasses the totality of the specific and articulable facts of which the Defendants acknowledge Officer Bright was aware at the time he approached, with his hand on his firearm, and stopped Mr. Northrup (Bright Deposition, pg. 46, LL 13-14).  No other facts are asserted by the Defendants to have been of their knowledge at the time Officer Bright stopped Mr. Northrup, and at such time Officer Bright had not yet spoken with the original 911 caller (Defendants' brief, pg. 3).  The stop of Shawn Northrup was without reasonable suspicion.  "An anonymous tip that a person is carrying a gun is not, without more, sufficient to justify a police officer's stop and frisk of that person."  *Florida v. J.L.,* 529 U.S. 266, 266, 120 S.Ct. 1375, 1377 (2000).  An anonymous tip must be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." if it is to provide reasonable suspension for a Terry investigatory stop. *Id.* 266.  Officer Bright testified he based his stop of Mr. Northrup on the 911 call (which did not suggest any crime had been committed), and not on any facts he observed (Bright Depo. pg. 41, LL 4-25 and pg. 44, LL 9-12).

Contrast the facts noted above to the *Cortez* standard noted below:

[d]etaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity . . . . the evidence collected must be weighed as understood by those versed in the field of law enforcement . . . [a]lso, the process must raise suspicion that the particular individual being stopped is engaged in wrongdoing.

13

The limited facts noted above do not support a reasonable inference that Mr. Northrup was engaged in criminal activity or wrongdoing. Thus the stop itself, even under the fairly liberal standard allowed to law enforcement under *Terry* and *Cortez*, was an infringement on Mr. Northrup's Fourth Amendment rights.

Officer Bright's incident report, a report he corroborated as his best recollection of the facts and truthful to the best of his recollection (Bright Depo., pg. 19, LL 8-15 and Exhibit B, Police Report), offered an alternative explanation why he stopped Mr. Northrup;  he stopped Mr. Northrup to conduct an investigation as to whether Mr. Northrup was legally carrying a firearm (Bright Depo., pg. 80, LL 10-13), to see if he was precluded from carrying a firearm (Bright Depo., pg. 81).  Yet nowhere in Officer Bright's deposition testimony, the written police report, or in the Defendants' brief is there provided any factual basis for the officer to have suspected that Mr. Northrup was in violation of any requirement or regulation which would have precluded him from openly carrying a firearm on a public sidewalk. (Compare stopping an automobile, without any basis for suspicion, for no purpose other than to ascertain if the driver has a license, or is in lawful possession of the car.  *See Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 1401 (U.S.Del.,1979)):

> Accordingly, we hold that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.

*Id.* at 663.

In summary, Defendants have not provided any evidence for concluding that the stop of Mr. Northrup was based upon a particularized and objective reason for suspecting Mr. Northrup of criminal activity.

14

Further, the arrest subsequent to the stop of Mr. Northrup constituted a more serious infringement, judged under the more stringent standard of probable cause.

In *Maryland v. Pringle*, 540 U.S. 366, 124 S.Ct. 795, 800 (U.S.Md.,2003) the Supreme Court stated:

> [t]o determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause, (citing to *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911.(1996)).

*Id.* at 371.

> Probable cause denotes 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.' " *Painter v. Robertson*, 185 F.3d 557, 569 (6th Cir.1999) (citations omitted). The officer's belief of criminal activity must be supported by something more than mere suspicion, though less than prima facie proof. *United States v. Harris*, 255 F.3d 288, 292 (6th Cir.2001) (citation omitted).

*Shevlin v. Cheatham*, 211 F.Supp.2d 963, 968 (S.D.Ohio,2002).

Mr. Northrup was seized, i.e. arrested, at the point when Officer Bright approached with his hand on his firearm, and certainly when, in that posture, he began to give orders to Mr. Northrup to raise his hands, the subsequent events in which Officer Bright handcuffed Mr. Northrup and placed him in the rear seat of the patrol car (Bright Deposition, pg. 50, LL 9-15) definitely constituted an arrest. Arrest is defined as occurring when the following four requisite elements are present: (1) an intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested. *State v. Darrah*, 64 Ohio St.2d 22, 26, 412 N.E.2d 1328, 1330 - 1331 (Ohio, 1980).  The intent to arrest was confirmed in Officer Bright's deposition, stating

15

that he arrested Mr. Northrup for inducing panic (Bright Depo., pg. 61, LL 14-21, pg. 62, LL 1-2, pg. 67, LL 10-12).

The officer questioned Mr. Northrup about the incident prompting the 911 call and was told there had been a verbal exchange with the person who called the police, and that the discussion included vulgarities and an argument over the open carrying of a firearm (Defendants' brief, p. 3).  Defendants' account of the incident states that after asking for Mr. Northrup's driver's license and being given it, Officer Bright then asked for Mr. Northrup's concealed weapon carry permit.  When Mr. Northrup refused to answer any more questions, Officer Bright handcuffed Mr. Northrup and placed him in the rear of his patrol car.

Officer Bright stated that he arrested Mr. Northrup for inducing panic (Bright Depo., pg. 61, LL 14-21, pg. 62, LL 1-2, pg. 67, LL 10-12). Nowhere, however, do the Defendants cite facts that demonstrate any specific knowledge or observation of any action of Mr. Northrup's, or even hearing of an allegation made by others of any specific action which could be determined to be an element of the crime of inducing panic.

The crime of inducing panic is described in R.C. § 2917.31 as follows:

> (A) No person shall cause the evacuation of any public place, or otherwise cause serious public inconvenience or alarm, by doing any of the following:
> (1) Initiating or circulating a report or warning of an alleged or impending fire, explosion, crime, or other catastrophe, knowing that such report or warning is false;
> (2) Threatening to commit any offense of violence;
> (3) Committing any offense, with reckless disregard of the likelihood that its commission will cause serious public inconvenience or alarm.

In contrast to the actions that would constitute conduct prohibited by the statute, the facts, as described by the Defendants at the time of the arrest, assert no more than an anonymous caller reported that "a man walking a dog on Rochelle Rd. was carrying a hand gun out in the open"

16

(Defendants' brief, pg. 2), that Officer Bright was dispatched with no more information than the following: an anonymous caller had observed Mr. Northrup walking with his family, openly and legally carrying a firearm, and that Mr. Northrup, in the officer's version of their conversation, described an argument over the open carrying of a firearm.

The issue to be resolved is this: do those facts meet the test noted above, that they would warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit the offense of inducing panic?  The conclusion must be no, as the Defendants' brief describes Officer Bright's reasoning as believing the verbal exchange "might have resulted in an offense of inducing panic" (Defendants' brief, pg. 3). However, the standard for probable cause requires that the officer's belief of criminal activity must be supported by something more than mere suspicion.  In this case, with no fact observed or alleged that could be an element of the crime for which Mr. Northrup was arrested, it was nothing more than mere suspicion, speculation in fact as to what may have occurred during the verbal exchange that was the basis of the arrest.  In the absence of the observation of any event or any allegation of an event that would constitute an element of the crime, it can only be concluded that there was no probable cause for the arrest and a Fourth Amendment violation.

According to Defendants' brief, pg. 4-5, after consultation with Sergeant Ray and the Toledo Police Detective Bureau, the officers decided to charge Mr. Northrup with Failure to Disclose Personal Information, released Mr. Northrup, and issued him a citation for that violation.

The charge of Failure to Disclose Personal Information was entirely baseless.  Mr. Northrup had fully complied with R.C. § 2921.29.  Division (C) of such section states "[n]othing

in this section requires a person to answer questions beyond a person's name, address, or date of birth. . . .[n]othing in this section authorizes a law enforcement officer to arrest a person for not providing any information beyond the person's name, address, or date of birth or for refusing to describe the offense observed."  Mr. Northrup had surrendered his driver's license to Officer Bright (as acknowledged in Defendants' brief, pg. 4, and Bright Depo., pg. 48, LL 22-25, pg. 49, LL 1-2, 9-15, pg. 86, LL 1-5).  Providing his driver's license supplied all the information the statue requires. As such, Mr. Northrup had not violated the statute and in the circumstances, no reasonable or prudent person could determine that probable cause justified arrest for violation of that statute.

Such actions by the arresting officer, with respect to the charges of inducing panic or failure to disclose personal information, even under the facts as presented by the Defendants, demonstrate that the arrest of Mr. Northrup was without probable cause and a violation of Mr. Northrup's Fourth Amendment Rights protecting him from unreasonable search and seizure.

Although Defendants, by their own arguments and testimony, have not presented facts sufficient to justify the detention or arrest of Mr. Northrup, other facts asserted by Mr. Northrup in his deposition and in the affidavit of Denise Northrup further support the conclusion that Mr. Northrop was stopped without reasonable suspicion and arrested without probable cause.  To the extent the Defendants contest any of the facts stated in the deposition or affidavit of the Northrups, material questions of fact remain to be determined, making summary judgment inappropriate at this time (see Northrup Depo., and Exhibit C, Affidavit of Denise Northrup).

For the above stated reasons, nothing in the arguments or evidence the Defendants have presented to this court in their memorandum in support of their motion for summary judgment justifies the detention and arrest of Mr. Northrup, and further, questions of material fact raised by

18

the assertions of Mr. Northrup in his deposition and Mrs. Northrup's affidavit warrant this Court to deny the Defendants' motion for summary judgment and proceed to trial of the issues of the complaint.

### C. Officer Bright's Actions, In Concert with Other Members of The Toledo Police Department, In The Arrest of Mr. Northrup Violated Clearly Established Federal and State Laws and Therefore the Defendants are Not Entitled to Qualified Immunity.

Defendants' brief attempts to characterize the incidents of the encounter between officers of the Toledo Police Department and Mr. Northrup as a brief investigatory detention, and the word "arrest" appears nowhere in their brief (Defendants' brief, pgs. 2-5) except where they state "[Mr. Northrup] was not arrested" (Defendants' brief, pg. 16). However, the officers' actions, as described in the Defendants' brief and in Officer Bright's deposition testimony, definitely constituted an arrest of Mr. Northrup (*see* discussion of arrest *supra* under Fourth Amendment violation).

Defendants assert that they are entitled to qualified immunity. Qualified immunity has been described as:

> an affirmative defense that shields public officials performing discretionary functions from civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A police officer may be entitled to qualified immunity for wrongful arrest even if his probable cause determination is incorrect, however, if a reasonable police officer in his position could have believed that probable cause existed to arrest. *Avery v. King*, 110 F.3d 12 (6th Cir.1997).

*Dietrich v. Burrows* 976 F.Supp. 1099, 1103 (N.D.Ohio,1997)

The *Detrich* Court stated that the determination of whether qualified immunity should apply would require a court to "determine whether the defendant officers' probable cause determination was reasonable, even if wrong." *Id.*

19

In cases involving wrongful arrest, the *Detrich* court recognized that Federal courts have rarely found officers to be entitled to qualified immunity when they have made an arrest where probable cause was lacking, due to the closely analogous standards involving both concerns.

> This Court's research indicates that Federal Courts rarely find qualified immunity to be a valid defense to a false arrest in the absence of actual probable cause. To some extent, this may result from the closely analogous standards for true probable cause and a reasonable belief that probable cause exists. As a matter of logic, it is difficult to conceive of an instance in which the facts and circumstances within the officer's knowledge are sufficient to warrant a reasonable officer in believing that a prudent person, or one of reasonable caution, would believe, "in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense" (the qualified immunity standard), but in which a reasonably prudent person would not, in fact, believe that the suspect is committing an offense (the probable cause standard).

*Id.*

The *Detrich* court noted that in the relatively few cases where qualified immunity was found to apply in the absence of probable cause for the arrest of an individual, there was in fact probable cause to believe an offense had taken place, but due to a reasonable error on the part of the law enforcement personnel, mistaken identity resulted in the arrest of an innocent person.

> The few reported cases in which an arresting officer has been protected by qualified immunity in the absence of actual probable cause have generally arisen where a factual error led to the arrest of an innocent person, and probable cause would have existed but for the factual error. See, e.g., *Pray v. City of Sandusky*, 49 F.3d 1154 (6th Cir.1995) (arresting officers entered wrong apartment); *Jeffers v. Heavrin*, 10 F.3d 380 (6th Cir.1993) (arresting officer erroneously thought allergy medication was contraband drug); *Atkins v. Lanning*, 556 F.2d 485 (10th Cir.1977) (facially valid warrant had name of wrong person on it).

*Id.* at 1104.

No such circumstances justifying the recognition of qualified immunity on the part of the Defendants apply in the case of the arrest of Mr. Northrup.  As set forth *supra*, Defendants have not made a case that a prudent person, or one of reasonable caution, would believe in the circumstances shown, that Mr. Northrup had committed any offense, but rather, as noted *supra*,

the determination to arrest Mr. Northrup is best described as based upon speculation about what might have happened or could have happened, without benefit of any facts, or even third party allegations of facts, that could lead one to believe any crime had been committed.

In addition to the failure of probable cause for arrest implicating the Fourth Amendment violations discussed *supra*, the Defendants have otherwise forfeited qualified immunity by unlawful procedural actions compromising Mr. Northrup's Fourth Amendment Rights.

Officer Bright's arrest of Mr. Northrup for inducing panic was in violation of long-standing and clearly established law prohibiting the warrantless arrest of a person for a misdemeanor unless the offense has been committed in the officer's presence.

> Police officers in Ohio, under R. C. 2935.03, have authority to arrest and detain persons found violating the laws of this state, or ordinances of municipal corporations, until a warrant can be obtained. This language, "found [*76] violating," has been interpreted to authorize a warrantless arrest [**154] for misdemeanor only where the offense has been committed in the officer's presence. *State v. Lewis* (1893), 50 Ohio St. 179. See, also, *Carroll v. United States*, supra (267 U.S. 132).

*State v. Mathews*, 46 Ohio St. 2d 72, 75-76 (Ohio 1976)

In *Carroll v. United States*, 267 U.S. 132 (U.S. 1925), the United States Supreme Court similarly recognized the common law prohibition of warrantless arrests for misdemeanor in a case involving federal laws.

> In cases of misdemeanor, a peace officer like a private person has at common law no power of arresting without a warrant except when a breach of the peace has been committed in his presence or there is reasonable ground for supposing that a breach of peace is about to be committed or renewed in his presence.

*Id* at 157.

As stated by Officer Bright in his deposition, Mr. Northrup was arrested for inducing panic (Bright Deposition, pg. 50, LL 9-15, pg. 61, LL 14-21, pg. 62, LL 1-2, pg. 67, LL 10-12). This is corroborated by the affidavit of Denise Northrup, who stated that Officer Bright "told

Shawn he was placing him under arrest for inducing panic" (Exhibit C, Affidavit of Denise Northrup, pg. 3, ¶ 15); information Officer Bright was required to provide to Mr. Northrup under his duty to inform him of the cause of his warrantless arrest, R.C. § 2935.07.

Inducing panic, R.C. § 2917.31, is a misdemeanor unless it involves physical harm to a person, economic harm in excess of one thousand dollars, the violation occurs in a school or institution of higher education, or involves the purported, threatened or actual use of a weapon of mass destruction. *See id.*

By the admissions of Defendants' brief and deposition testimony, Officer Bright possessed no personal knowledge, nor had he observed, or even been told anything that would suggest that Mr. Northrup had committed a felony. Moreover, the confrontation that Officer Bright "believed might have resulted in the offense of inducing panic" had not been committed in his presence.

As Defendants have not, and cannot, establish any reasonable basis for suspicion at the time of Mr. Northrup's arrest that a felony had been committed, nor had they any legal basis for a warrantless arrest of Mr. Northrup for misdemeanor, the arrest of Mr. Northrup, under the evidence provided by the Defendants, violated clearly established law of which a reasonable officer would be aware in depriving Mr. Northrup of constitutional rights protected by the Fourth Amendment. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

Defendants' brief (pg. 4-5) describes the events subsequent to Mr. Northrup's arrest which make it apparent that only after Officer Bright's discussion with Sergeant Ray (who arrived at the scene after the arrest), and further discussion with the Toledo Police Detective Bureau, did Officer Bright issue Mr. Northrup a citation for Failure to Disclose Personal Information, R.C. § 2921.29, not for inducing panic.

The charge of Failure to Disclose Personal Information was similarly ungrounded.  Mr. Northrup had fully complied with R.C. § 2921.29, *supra*.  Mr. Northrup had surrendered his driver's license to Officer Bright (as acknowledged in Defendants' brief at pg. 4, and Bright Deposition, pg. 48, LL 22-25, pg. 49, LL 1-2, 9-15, pg. 86, LL 1-5).  Mr. Northrup's driver's license provided all the information the statue requires. As such, he had not violated the statute, and as was the case with respect to the charge of inducing panic, the groundless charge for that misdemeanor gave no justification for Mr. Northrup's arrest, and provides no defense to the claims that Officer Bright, in concert with other members of the Toledo Police Department and the Detective Bureau, violated clearly established statutory or constitutional rights of which a reasonable officer would be aware.

In both instances, the determination that an arrest could be made for a misdemeanor where the officers had no personal knowledge or observations of any illegal activity, and the groundless issuance of a citation for failure to give personal information, with the implication that it could be a valid basis for arrest, show what at best could be called a reckless indifference to the requirements of the law and Mr. Northrup's Fourth Amendment Right to be free from unreasonable search and seizure.

The Toledo Police officers involved in the incident knew that they had no power to arrest Mr. Northrup either under the charge of inducing panic or for failure to provide personal information.  Thus, in this case the issue goes beyond probable cause or lack thereof.  Under such circumstances, the defense of qualified immunity is not available to the Defendants.

> **D. The Facts Establish The Toledo Police Officers are Not Entitled to Statutory Immunity Under R.C. § 2744.03 Because They Engaged in Malicious Conduct, in Bad Faith, in a Wanton and Reckless Manner by Intentionally Arresting, Detaining and Asserting Excessive Force and Asserting a Sham Legal Process, Interfering with Mr. Northrup's Civil Rights.**

Officer Bright and Sergeant Ray conspired to deprive Mr. Northrup of his constitutional right of free speech, the right to bear arms, and the right to be free from unreasonable searches and seizures under both the United States Constitution and Ohio Constitution (supra) by employing a sham legal process in violation of R.C. § 2921.52. After determining Mr. Northrup was at all times engaged in lawful conduct and after having arrested him without any lawful basis or probable cause, they conspired with the Toledo Police Detective Bureau to falsely charge him in a sham legal process by asserting he failed to provide his personal identification.

In spite of knowing that Mr. Northrup had provided his personal information both verbally and by handing over his driver's license, Officer Bright and Sergeant Ray charged him with failing to provide his personal information pursuant to R.C. § 2921.29(A)(1). As mentioned supra, Officer Bright had no reasonable suspicion that Mr. Northrup was committing, had committed, or was about to commit a criminal offense justifying the officer's request for personal information. In spite of having no legal basis, Mr. Northrup voluntarily provided his driver's license. After Mr. Northrup refused to discuss his concealed carry license or provide any further information on whether he had a concealed carry license, Officer Bright arrested him for inducing panic. Upon determining that he did not induce panic by engaging in lawful conduct, the police charged him in a sham legal process.

R.C. § 2921.52 is a criminal statute relating to "sham legal process," which is defined as:

(4) "Sham legal process" means an instrument that meets all of the following conditions:

      (a) It is not lawfully issued;
      (b) It purports to do any of the following:
        (i) To be a summons, subpoena, judgment, or order of a court, a law
          enforcement officer, or a legislative, executive, or administrative body.
        (ii) To assert jurisdiction over or determine the legal or equitable status, rights,
          duties, powers or privileges of any person or property.
        (iii) To require or authorize the search, seizure, indictment, arrest, trial or
          sentencing of any person or property.

(c) It is designed to make another person believe that it is lawfully issued.

R.C. § 2921.52(A)(4).

When Officer Bright handed the Citation to Mr. Northrup, he explicitly stated he was giving him this citation to appear in court for failing to provide personal information for his failure to disclose he had concealed carry license (Exhibit F at 1:45, Shawn's Audio Recording, and Northrup Deposition, pg. 47, LL 16-22).

R.C. § 2921.52 also provides that:

[n]o person shall .... (1) knowingly issue, display, deliver, distribute, or otherwise use sham legal process; (2) knowingly use sham legal process to arrest, detain, search, or seize any person or the property of another person; (3) knowingly commit or facilitate the commission of an offense, using sham legal process; [or] (4) knowingly commit a felony by using sham legal process.

R.C. § 2921.52(B).

Violations of this statute may be considered either a misdemeanor or felony, depending on the circumstances.

R.C. § 2921.52(D).

The statute provides for civil liability, as follows:

(E) A person who violates this section is liable in a civil action to any person harmed by the violation for injury, death, or loss to person or property incurred as a result of the commission of the offense and for reasonable attorney's fees, court costs, and other expenses incurred as a result of prosecuting the civil action commenced under this division. A civil action under this division is not the exclusive remedy of a person who incurs injury, death, or loss to person or property as a result of a violation of this section.

R.C. § 2921.52(D)

This statute clearly provides for civil liability of the actions of Officer Bright, Sergeant Ray and the Detective Bureau in creating and delivering a sham legal process including injuries to his person.  R.C. § 2744.03(A)(6)(c) explicitly excludes statutory immunity when liability is expressly imposed upon the employee by a section of the Revised Code such as R.C. § 2921.52.

25

Mr. Northrup also asserts a claim against Officer Bright for vindictive enforcement.  For this claim to succeed, he must establish: (1) the exercise of a protected right, (2) the officer's stake in deterrence of the exercise of that right, (3) the unreasonableness of the officer's conduct, and (4) that the enforcement was intended to punish the plaintiff for the exercise of the protected right.  *Shevlin v. Cheatham,* 211 F.Supp2d 963, 971 (2002).

Mr. Northrup asserts that Officer Bright acted intent to deprive him of his First Amendment and Fourth Amendment rights when he charged him for failing to discuss his concealed carry license.  Officer Bright viewed Mr. Northrup engaging in lawful conduct but attempted to charge a law abiding person of criminal conduct in a total disregard of any reasonable suspicion or probable cause.  He charged him on the basis he wanted to explain the proper way Mr. Northrup should carry a firearm.  Officer Bright wanted to know if Mr. Northrup had a CCW so he could instruct him that is how he should carry, "just cover it up … with a shirt" (Bright Depo., pg. 49, LL 16-25 and pg. 50, LL 1-2).  When Mr. Northrup refused to answer his questions regarding his concealed carry license, he arrested him for inducing panic (supra).  Mr. Bright's assurance that this is how Mr. Northrup should carry infringed on his First Amendment Right and Fourth Amendment Right because he stopped on the pretext to "make sure he was lawfully carrying."  His actions were with malicious purpose, in bad faith, or in a wanton or reckless manner precluding Ohio Statutory Immunity.  R.C. § 2744.03(A)(6)(b).

Moreover, Mr. Northrup also asserts that Officer Bright threatened him with deadly force committing an assault and followed up by committing a battery by arresting him, placing him in handcuffs in the back seat of his police cruiser without probable cause precluding summary judgment on material facts to be decided by the jury.

### E.  Officer Bright Violated Mr. Northrup's Fourth Amendment Rights When He Handcuffed Him in an Unduly Tight Manner.

26

In order for a handcuffing claim to survive summary judgment, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing." *Fettes v. Hendershot, et al.* 375 Fed. Appx. 528, 534 (2010), WL 1697727 (C.A. 6 (Ohio)).

The facts clearly establish that Officer Bright arrested and handcuffed Mr. Northrup without any lawful basis.  Upon handcuffing him, Mr. Northrup asked for the handcuffs to be loosened.  Officer Bright did something to the handcuffs, as he stated that he loosened them, but Mr. Northrup told him they were still too tight (Northrup Depo., pg. 37, LL 1-4).  Officer Bright ignored Mr. Northrup request to loosen the handcuffs some more and was then placed in the back of the police cruiser (Northrup Depo., pg. 37, LL 11-17).   The handcuff placed on his wrists for more than thirty minutes caused ligature marks and caused his fingers to go numb along with a feeling of pins and needles (Northrup Depo., pg. 41, LL 19-25).

Moreover, Officer Bright acted with malice to injure Mr. Northrup when he intentionally handcuffed him to tight and refusing to loosen them after Mr. Northrup complained they were too tight.  He intentionally applied the handcuffs too tight in retaliation of Mr. Northrup's refusal to answer any more questions and disclose whether he had a concealed carry license.  After Mr. Northrup complained that the handcuffs were too tight, Officer Bright allegedly loosened them but Mr. Northrup again complained they were too tight.  In total disregard for the pain and injury he was causing Mr. Northrup, he ignored him and placed him in the back of the police cruiser.

**F.  Officer Bright, Sergeant Ray and the Detective Bureau Acted Pursuant to a Long Standing Policy of Formulating Charges Against Law Abiding Individuals After Violating Constitutional Rights.**

Generally, a municipality cannot be held liable under Section 1983 under a theory of respondeat superior. To establish a claim against a municipality, plaintiff must plead and prove an injury caused by an action taken "pursuant to official municipal policy of some nature." *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 691 (1978). Mr. Northrup asserted that City of Toledo were liable under a *Monell* claim for actions of the Defendants that were carried out pursuant to one or more interrelated *de facto* policies, procedures, practices and/or customs known to and tacitly or otherwise condoned by the City of Toledo and/or the other police officers and/or their commanding officers in permitting its officers to file false charges, sham legal processes, and pre textual criminal stops without reasonable suspicion or probable cause (Verified Complaint, §§116-122). Assuming the facts most favorable to Mr. Northrup, he has established that State and Federal Constitutional violations for stopping and arresting without reasonable suspicion or probable cause. Additionally, he has established state law violations including for sham legal process pursuant to R.C. § 2921.52. Officer Comes and Sergeant Ray both testified to the policy and procedures they followed imploring the Detective Bureau to formulate and develop charges against individuals that were already arrested (Ray Depo., pgs. 19-24 and Comes Depo., pgs. 60-61). In this particular case, Sergeant Ray decided on what charge to be levied against Mr. Northrup after consulting with the Detective Bureau even though Mr. Northrup was already arrested for inducing panic (Ray Depo., pg. 23, LL 16-18), Moreover, Officer Comes testified if he saw an officer making up a charge against someone it would be something he would have to report (Comes Depo., pg. 44, LL 10-23). That never occurred. The Police Officers acting within established policies and procedures created sham legal proceedings against Mr. Northrup after they determined he had not engaged in any

unlawful conduct.  The actions of the Toledo Police officers and Detective Bureau preclude summary disposition based upon disputed material facts.

## IV.     CONCLUSION

The City of Toledo and its police officers are not entitled to summary judgment because they have not set forth undisputed facts sufficient to avoid liability for plaintiff's claims. Further, disputed material facts exist precluding the granting of summary judgment in favor of the defendants.   Consequently, defendants' motion for summary judgment should be denied.


Respectively submitted,

/s/ Daniel T. Ellis
Daniel T. Ellis (0038555)

Attorney for Plaintiff
Shawn Northrup


### CERTIFICATE OF TRACK AND PAGE LIMITATION

I hereby certify that the case under which the foregoing document is being filed has been assigned to the Complex Track and the document meets the page limitation requirements of Local Rule 7.1.


By:     /s/ Daniel T. Ellis
        Daniel T. Ellis          (0038555)

        LYDY & MOAN, Ltd.
        4930 N. Holland-Sylvania Rd.
        Sylvania, OH  43560
        Telephone:    (419) 882-7100
        Facsimile:     (419) 882-7201
        Email:  dellis@lydymoan.com