IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Shawn C. Northrup, | ) | Case No. 3:12-cv-01544-JJH |
| Plaintiff | ) ) ) | Judge Jeffrey J. Helmick |
| vs. | ) ) | **REPLY MEMORANDUM** |
| City of Toledo, *et al.*, | ) ) | Adam W. Loukx, Director of Law |
| Defendants. | ) ) ) ) ) ) ) ) ) ) ) | (0062158)) John T. Madigan, Senior Attorney (0023614) City of Toledo, Department of Law One Government Center, Suite 2250 Toledo, Ohio 43604-2293 Telephone: (419) 245-1020 Fax: (419) 245-1090 Counsel for Defendants |

In his memorandum in opposition to the Defendants' motion for summary judgment the Plaintiff attempts to characterize the actions of the Toledo Police Officers as abusive, excessive and unwarranted while minimizing his own uncooperative conduct which escalated and prolonged an otherwise unremarkable investigatory stop. The memorandum filed by the Plaintiff also introduces for the first time an entirely new theory of recovery based upon a State of Ohio statute prohibiting the filing of a sham legal process. This belated attempt to circumvent the Defendants' immunity under state law is not properly raised at this stage of the proceedings.

The Plaintiff asks the Court to substitute his view of how an investigation of a man with a gun should be conducted for that of trained police officers. Based upon the foregoing the Defendants Officer David Bright, Officer Donald Comes, Sergeant Daniel Ray and the city of Toledo respectfully request that the Court enter an order dismissing the claims against them.

## BRIEF IN SUPPORT

### A. Introductory Statements

Throughout his brief in opposition, Plaintiff refers to his "arrest". Plaintiff was never arrested by Defendants but was issued a summon to appear in court for a misdemeanor offense. Plaintiff was stopped under a lawful *Terry* stop. The fact that the Plaintiff was detained, questioned and handcuffed does not transform this *Terry* stop into an arrest. *United States v. Foster*, 376 F. 3d 577 (6th Cir.2004) As was recognized by the U.S. Supreme Court in *Terry v. Ohio*, 392 U.S.1,11 fn.5, 88 S. Ct.1868, 20 L.Ed. 2d 889 (1986), "the stopping of the individual to inquire is not an arrest and the ground upon which the police may make the inquiry may be less incriminating than the ground for an arrest for a crime known to have been committed". Provided the scope of the investigatory stop does not exceed the bounds of a permissible *Terry* stop, the detention does not amount to an arrest. *Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 814-815 (6th Cir. 1999). In this case the scope of the investigatory stop was proper and, as such, Plaintiff was not arrested.

### B. Plaintiff's First And Second Amendment Rights Were not Violated

To succeed on his First Amendment claim, the Plaintiff must prove that

(1) [he] engaged in protected conduct; (2) and adverse action was taken against [him]
That would deter a person of ordinary firmness from continuing to engage in that
Conduct; and (3) there is a causal connection between elements one and two that is,
The adverse action was motivated at least in part by plaintiff's protected conduct.

*Tucker v. City of Richmond,Ky.*, 388 F.3d 216,220 (6th Cir.2004)

Plaintiff has made no allegations that the investigatory stop was the result of his engagement in free speech. Rather, in his memorandum in opposition, Plaintiff alleges that the investigatory stop and detention was the result of Plaintiff's openly carrying a handgun. Plaintiff appears to

admit that the motivation for the officer's stop and detention of him was unrelated to his engagement in protected speech, but rather his possession of firearms.

Even if the Plaintiff has raised the inference that the detention was related to his engagement in free speech,

> "If the defendant can demonstrate that it would have taken the same action in the absence of the protected activity, it has met its burden and is entitled to summary judgment if it can show affirmatively that there is no genuine issue in dispute."

*Tucker v. City of Richmond, Ky.* supra at 220.

The basis for the Plaintiff's stop was a safety check against potential criminal activity and to confirm that the Plaintiff was not intending to cause harm with a loaded weapon. Regardless of whether Plaintiff was engaged in symbolic speech, the investigatory stop still have occurred based upon the 9-1-1 call made to the police department.

There is no indication that the investigatory stop adversely affected Plaintiff's symbolic speech. Under the second element, the plaintiff must prove that the allegedly adverse actions were capable of "deterring a person of ordinary firmness; there is no requirement that the plaintiff show actual deterrence."

The Plaintiff was not arrested nor did the City prohibit Plaintiff from engaging in this symbolic speech. He was briefly detained and questioned with respect to his identity and his ability to carry a firearm lawfully. The Plaintiff's only complaint at the beginning of the investigation was based on his opinion that Officer Bright had all the information he needed and that he (Northrup) should therefore be free to go on his way. This does not indicate any intent to retaliate against Plaintiff for his exercise of his Free Speech rights such that a person of ordinary firmness would be deterred from exercising his or her free speech rights in the future. As such, Plaintiff's First Amendment claims should be dismissed.

3

As stated previously in their motion for summary judgment, the Defendants deny that the Plaintiff had a private right of action under Article I, § 2 of the United States Constitution at the time this incident occurred. The U.S. Supreme Court did not find the Second Amendment applicable to the states until twelve days after the Plaintiff's detention. The Court's ruling in *McDonald v. City of Chicago*, 130 S.Ct.3020, 177 L.Ed.2d 894 was the first decision to change this long standing precedent. In *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct.2783, 171 L.Ed.2d 637 (2008) the Supreme Court held that the Second Amendment right to bear arms was an individual right. That case, brought to enjoin the enforcement of certain District of Columbia ordinances prohibiting the total possession of handguns, did not discuss the application of the Second Amendment to the states under the Fourteenth Amendment of the United States Constitution. As of June 16, 2010 there was no authority or precedent for the filing of a civil rights complaint to redress a violation of the Second Amendment of the United States Constitution.

The Plaintiff does not have a private right of action under the constitution of the State of Ohio for violations of his rights to bear arms or his freedom of speech. In *Provens v. Stark County Bd. of Mental Retardation & Developmental Disabilities*, 64 Ohio St.3d 252, 254, 594 N.E.2d 959 (1992), the Ohio Supreme Court held that the right to freedom of speech conferred under Article 1, Section 11 of the Ohio Constitution is not self-executing and does not create a private cause of action. See, also: *PDU, Inc v. City of Cleveland*, 8th Dist.App.No.81944, 2003-Ohio-3671; *Chalker v. Howland*, 74 Ohio Misc.2d 5, 22, 658 N.E.2d 335 (1995). In holding that Provens did not have a private cause of action for an alleged violation of Article I, Section 11, the Ohio Supreme Court stated:

"This constitutional provision does not set forth an accompanying cause of action for a violation of the right of free speech. And, parenthetically, no other constitutional provision relied upon by the appellant provides an individual cause of action of an alleged violation of such constitutional right. Additionally, the Ohio General Assembly has not authorized such an action."

Further, in *State v. Williams*, 88 Ohio St.3d 513, 728 N.E.2d 342 (2000), the Ohio Supreme Court explained:

"A constitutional provision is self-executing when it is complete in itself and becomes operative without the aid of supplemental or enabling legislation. *In re Protest Filed by Citizens for the Merit Selection of Judges, Inc.*, 49 Ohio St.3d 102, 104, 551 N.E.2d 150,152 (1990). Likewise, a constitutional provision is not self-executing if its language, duly construed, cannot provide for adequate and meaningful enforcement of its terms without other legislative enactment. *State ex rel. Russell v. Bliss*, 156 Ohio St. 147, 151-152, 46 Ohio Op. 3, 5, 101 N.E.2d 289, 291(1951). Stated more succinctly, the words of a constitutional provision must be sufficiently precise in order to provide clear guidance to courts with respect to their application if the provision is to be deemed self-executing."

Likewise, Article I,§ 4 of the Constitution of Ohio is not sufficiently precise to provide clear guidance to the courts with respect to the enforcement of its terms or application of its provisions. Like Article I, § 11, it is a statement of fundamental ideals upon which our government is based. It requires supplemental or enabling legislation to give it practical effect.

R.C.§ 9.68 does not provide the Plaintiff with a right of action. It states, in part:

"9.68 Right to bear arms - challenge to law.
(A) The individual right to keep and bear arms, being a fundamental individual right that predates the United States Constitution and Ohio Constitution, and being a constitutionally protected right in every part of Ohio, the general assembly finds the need to provide uniform laws throughout the state regulating the ownership, possession, purchase, other acquisition, transport, storage, carrying, sale, or other transfer of firearms, their components, and their ammunition. Except as specifically provided by the United States Constitution, Ohio Constitution, state law, or federal law, a person, without further license, permission, restriction, delay, or process, may own, possess, purchase, sell, transfer, transport, store, or keep any firearm, part of a firearm, its components, and its ammunition.

(B) In addition to any other relief provided, the court shall award costs and reasonable attorney fees to any person, group, or entity that prevails in a challenge to an ordinance, rule, or regulation as being in conflict with this section.

(C) As used in this section:

(1) The possession, transporting, or carrying of firearms, their components, or their ammunition include, but are not limited to, the possession, transporting, or carrying, openly or concealed on a person's person or concealed ready at hand, of firearms, their components, or their ammunition."

This statute was passed by the Ohio General Assembly for the sole purpose of preempting municipal ordinances that regulated the possession and ownership of firearms. It has no application in this case since the Plaintiff was not charged with a municipal code weapons offense.

### C. Plaintiff's Fourth Amendment Rights Were Not Violated As The Officers Conducted A Lawful Investigatory Stop

Plaintiff argues that the officers did not have reasonable suspicion to believe he was engaged in any criminal enterprise at the time of the stop. Defendants outlined a host of reasons why the stop was reasonable, including unfamiliarity with Plaintiff and a lack of knowledge of what Plaintiff's intentions where and whether Plaintiff was intending to engage in a crime. In addition, contrary to Plaintiff's argument, several Ohio statutes restrict the carrying of firearms. For example, R.C. §2923.13 prohibits individuals under disabilities from possessing firearms. The officers could not determine merely by looking at Plaintiff whether he was prohibited under that section from owning a firearm. Disabilities, as defined by that law, include possession of a firearm by a person under indictment or convicted of a felony offense of violence . Possession of a firearm while under the influence of alcohol or drugs of abuse could also subject the weapon carrier to arrest. R.C.§ 2923.15. The officers were entitled to investigate to determine whether the Plaintiff's carrying of a firearm could constitute offenses within the meaning of these sections.

6

The appropriate standard for conducting a Terry stop is whether the officer has reason to believe that criminal activity may be occurring. *United States v. Sokolow*, 490 U.S. 1, 7,190 S.Ct.1581,104 L.Ed.2d 1 (1989). Further, the U.S. Supreme Court has recognized that "there could, of course, be circumstances in which wholly lawful conduct might justify the suspicion that criminal activity was afoot." *Reid v. Georgia*, 448 U.S. 438, 441,100 S.Ct.2752,65 L.Ed.2d 890 (1980). Given the 9-1-1 emergency call and a man carrying a pistol in the street who fit the description given to the police, the officers had reason to believe, or at the very least, reason to stop and inquire, as to what Plaintiff's activities were and to ensure that Plaintiff was lawfully in possession of the firearm.

Plaintiff argues that the anonymous tip the officers received was insufficient to justify the Terry stop. In support of this argument, he cites the *Florida v. J.L.*, 529 U.S. 266,120 S.Ct.1375,146 L.Ed.2d 254(2000). In that case, the U.S. Supreme Court addressed the "reasonable suspicion" component of the Terry stop. The Court found that the officers did not have reasonable suspicion to conduct the Terry stop as the officers did not have any personal observations to provide reasonable suspicion or to corroborate the anonymous tip. The Court ultimately held that the anonymous tip was not sufficiently reliable so as to provide reasonable suspicion for the Terry stop.

Unlike *Florida*, Defendants were able to corroborate the anonymous caller's tip as soon as they arrived on Rochelle Rd. In *Florida*, the suspect was accused of carrying a concealed weapon which was not readily observable to the responding officers. Here, the caller reported a male walking down the street openly carrying a firearm. When the officers arrived at the location, Plaintiff's firearm was clearly visible to them and provided the corroboration for the

7

anonymous tip. This situation simply does not present the potential for abuse that was a concern to the Court in *Florid*a.

A similar stop predicated upon an anonymous tip was upheld by the Sixth Circuit Court of Appeals in *Campbell v. Stamper*, 244 Fed. Appx. 629 (6th Cir. 2007). When the officers arrived in *Campbell*, the plaintiff had the firearm near him. He was not holding it or threatening any motorists or the officers with the rifle. The rifle was merely in close proximity to him. Nevertheless, the Sixth Circuit Court of Appeals still upheld the stop based on the plaintiff's possession of the firearm and the anonymous tip. Further, as set forth fully above, there was reasonable suspicion to believe that Plaintiff was or could be contemplating engaging in illegal activity. This, coupled with Plaintiff's location, provided reasonable suspicion to conduct the brief investigatory stop of Plaintiff.

As the officers had reason to believe that Plaintiff posed a danger to the safety of the individuals around him and were justified in briefly detaining Plaintiff to verify his proper possession of the firearms and to intentions, the brief investigatory stop of Plaintiff did not violate his Fourth Amendment rights.

Finally, the handcuffing of the Plaintiff in this case did not violate his Fourth Amendment rights. Here the Plaintiff complained that the handcuffs were too tight. Immediately, Officer Bright loosened the cuffs. Officer Bright did not notice any ligature marks on the Plaintiff's wrists or hear the Plaintiff complain that the handcuffs were still too tight.(Bright Depo.p51).

**D.   The Officers Are Entitled To Protection Under the Doctrine of Qualified Immunity**

In federal civil rights actions seeking money damages, government officials performing discretionary functions are entitled to qualified immunity so long as their acts do not violate clearly established statutory or constitutional rights of which a reasonable officer would be

aware. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In evaluating a claim of qualified immunity, the United States Supreme Court has directed that a reviewing court must first determine whether the facts alleged in support of civil rights claim demonstrate the violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

If the facts alleged would establish a constitutional violation if substantiated, a reviewing court must then determine whether it would have been clear to a reasonable officer at the time of the alleged violation that their actions were unlawful in the situation confronted. *Saucier*. The qualified immunity determination in this context is ordinarily a question that should be decided by the court, *Hunter v. Bryant*, 502 U.S. 224, 228 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). Likewise, in making this determination, the court should ask whether the government agent acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed after the fact. *Hunter* at 50 U.S. 224, 228.

Here, Officer Bright was dispatched by the 9-1-1 emergency operator to a location where a man was observed carrying a firearm. The description given of the person carrying the weapon was a man 6'4'' tall with a long pony tail wearing tan pants. No further information was provided to the officer concerning this unusual observation. As Officer Bright approached the Plaintiff, Northrup turned sideways and reached in the direction of his cell phone and his weapon. The officer considered this a "furtive movement" and decided to disarm the P. (Bright Depo.p.38, Attached Photograph). The Plaintiff then began to describe his encounter with the 9-1-1 caller that resulted in an argument. At this point, Officer Bright believed that an offense of Inducing Panic may have been committed. At the very least, Officer Bright needed more

9

information from the Plaintiff regarding this incident and the Plaintiff's ability to possess a firearm. Unlike the case relied upon by the Plaintiff, *Dietrich v. Burrows*, 976 F.Supp.1099 (N.D.Ohio,1997), the officers had no prior knowledge that the Plaintiff was lawfully permitted to carry a firearm or that the confrontation with Allen Rose was merely an exchange of vulgarities. This information was only discovered after a 36 minute investigation conducted by three police officers. The doctrine of qualified immunity protects an officer whose probable cause determination was reasonable even if it was wrong. *Dietrich v. Burrows* ,supra at 1103. While the Defendants dispute that an actual arrest of Northrup took place, their decision to detain and question the Plaintiff regarding the information available to them was entirely reasonable.

The Plaintiff's argument that Officer Bright did not have legal authority to arrest for an offense of Inducing Panic which was not committed in his presence is simply wrong. Ohio Revised Code § 2935.03 sets forth the arrest powers of law enforcement officers in the state. I t provides for arrests based upon probable cause as follows:

"(B)

(1) When there is reasonable ground to believe that an *offense of violence, * * *, a peace officer described in division (A) of this section may arrest and detain until a warrant can be obtained any person who the peace officer has reasonable cause to believe is guilty of the violation.*(emphasis added)"

Under R.C.§ 2901.01(A)(9) An "Offence of Violence" means any of the following:

(a) * * * 2917.31 (*Inducing Panic*) * * *"

The fact that this offense is a misdemeanor does not detract from a police officer's authority to arrest someone who he believes may have violated it. As stated previously, the Plaintiff was not arrested for Inducing Panic. He was detained by an officer who was attempting to discover, with difficulty, if that offense had in fact been committed by the Plaintiff. The Plaintiff's persistent

10

refusal to cooperate with the officer's investigation led to his being charged with the offense of Failure to Disclose Personal Information. Now the Plaintiff asks the Court to second guess the officer's decision at the scene four years ago and conclude that a conviction for that offense could never have been obtained. The charge was dismissed by a City of Toledo prosecutor for reasons that are not before this court. Only a trial and a ruling by a magistrate who could evaluate all of the evidence would be sufficient to show whether probable cause for this charge existed or not.

E. **The Plaintiff's Claim Based Upon A Sham Legal Process Cannot Be Maintained At This Stage of the Proceedings**

For the first time in his memorandum in opposition to defendants' motion for summary judgment the Plaintiff introduces a claim for relief based upon a Sham Legal Process R.C.§ 2921.52. The Sixth Circuit Court of Appeals has repeatedly held that a plaintiff may not expand his claims to assert new theories in response to a motion for summary judgment. *Bridgeport Music,Inc.v WB Music Corp.*508 F.3d 394,400 (6th Cir.2007), *Tucker v. Union of Needletrades, Industrial and Textile Employees*, 407 F.39 784,788 (6th Cir.2005), *Renner v. Ford Motor Company*,516 Fed.Appx.498 (6th Cir.2013).

The offense of a Sham Legal Process under R.C.§ 2921.52 was enacted in 1996 to address attempts by individuals displeased with government to intimidate and retaliate against public officials through the use of bogus court filingss. See *State v. Roten*, 149 Ohio App.3d 182,190,2002-Ohio-4488 (12th Dist.2002). This law was not designed to punish police officers who file criminal charges but fail to obtain a conviction. To permit the use of this statute in cases where a criminal charge is *nolle prosequi* would result in a chilling effect on law enforcement officers not intended by the legislature.

R.C.§ 2921.52 was not enacted to remove the immunity afforded to public employees under R.C.§ 2744.03. That statute states in part:

"(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:

\* \* \*

(c) Civil liability is *expressly imposed upon the employee* by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee." (emphasis added)

Nowhere in R.C.§ 2921.52 is there any language expressly imposing civil liability on public employees. That is because this law was enacted to protect public officials, not punish them for attempting to perform their duties.

F. **The Actions of the Police Officers Do Not Rise To A Level Of Misconduct That Would Remove Their Immunity Protection Under R.C.§ 2744.03**

The standards for an unreasonable detention or arrest do not apply to state law claims of civil liability. *Pernell v. Bills*, 6th Dist App.No.L-09-1082,2009-Ohio-6493 {¶ 9}. The officers while in the performance of a governmental function are protected by Ohio's governmental immunity statute, R.C.§ 2744.02. The Plaintiff can only overcome this grant of immunity if he can prove that the actions of the officers were with"…malicious purpose, in bad faith or in a wanton or reckless manner" R.C.§ 2477.03(A)(6)(b). Ohio courts have defined these liability triggering terms as follows:

12

" 'Malice' is the willful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct that is unlawful or unjustified. *Jackson v. Butler Cty. Bd. of Commrs.* (1991), 76 Ohio App.3d 448, 453-454, 602 N.E.2d 363; *Cook v. Cincinnati* (1995), 103 Ohio App.3d 80, 90, 658 N.E.2d 814. 'Bad faith' involves a dishonest purpose, conscious wrongdoing, intent to mislead or deceive, or the breach of a known duty through some ulterior motive or ill will. *Jackson; Cook.* 'Wanton' misconduct is the failure to exercise any care whatsoever. *Fabrey v. McDonald Village Police Dept.* (1994), 70 Ohio St.3d 351, 353, 639 N.E.2d 31. Finally, 'reckless' misconduct refers to misconduct that causes an unreasonable risk of harm and is 'substantially greater than that which is necessary to make [the] conduct negligent.' *Thompson v. McNeil* (1990), 53 Ohio St.3d 102, 104-105, 559 N.E.2d 705." ,*Pernell v. Bills*, supra at ¶ 18.

None of the actions taken by the officers in this case rise to the level of malicious, wanton reckless or bad faith so as to cause a loss of their immunity. Officer Bright while attempting to conduct a 9-1-1 emergency call investigation, took steps to secure an uncooperative suspect in possession of a firearm. Sergeant Ray assisted Officer Bright by contacting a detective to determine the appropriate offense with which to charge the Plaintiff. Officer Comes, who had no contact with the Plaintiff whatsoever, met with the 9-1-1 caller to discover what precipitated the phone call to the police. While the outcome of this case in Toledo Municipal Court was not what the officers expected, it is no proof that they were motivated by malicious, wanton or reckless intent.

G. **Plaintiff Cannot Maintain His *Monell* Claim Against The City Since He Has Failed to Show a Policy or Custom Directed By a City Policymaker**

Plaintiff attempts to characterize Sergeant's Ray telephone call to the police detective bureau and the subsequent advice he received as a "policy or custom" that would subject the City to liability under 42.U.S.C.A.§ 1983. While Sergeant Ray may have been the highest ranking officer involved, neither he nor Detective Wauford are "policymakers" whose advice could be

13

considered a policy or custom of the City of Toledo Police Department. In *Pembaur v. City of Cincinnati*, 475 U.S. 469,482,106 S.Ct.1292,89 L.Ed2d 452(1986) the Supreme Court made it clear that municipal liability attaches only where the decision maker possess final authority to establish municipal policy with respect to the action ordered.

"Having said this much, we hasten to emphasize that not every decision by municipal officers automatically subjects the municipality to § 1983 liability. Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.[10] The fact that a particular official—even a policymaking *482 official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.* * * . We hold that municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question…"

Plaintiff has failed to identify any written policy or departmental practice that may have resulted in a violation of his civil rights. The actions of the individual officers in this case cannot impose liability on the Toledo Police Department under the doctrine of *respondeat superior*.

The Plaintiff has also failed to sustain his burden that a a de facto municipal policy or custom was the basis for his deprivation of civil rights. The Sixth Circuit Court of Appeals has set forth the test for determining if a de facto municipal custom or practice exists. In order to establish municipal liability for a constitutional deprivation, a plaintiff must satisfy a three-prong test: 1) he must identify the questioned policy or custom which allegedly caused the injury, 2) connect the policy to the municipality, and 3) show the specific injury was incurred because of the implementation of the policy. *Garner v. Memphis Police Department,* 8 F.3d 358, 363-64 (6th Cir.1993). Here the Plaintiff's only evidence that a custom or policy existed was the officers contact with the detective bureau concerning a charge to be filed. All of the other "facts" set

forth on Page 28 of Plaintiff's memorandum in opposition rehash the alleged misdeeds of the officers but fail to connect them to any departmental policy or custom.

## CONCLUSION

For the reasons set forth above, the Defendants again request the grant the summary judgment and dismiss the Plaintiff's complaint.

The foregoing reply memorandum meets the page limitations for complex litigation briefs as set forth in Loc.R. 7.1(f)

Respectfully submitted,

ADAM W. LOUKX, DIRECTOR OF LAW

/s/ John T. Madigan
John T. Madigan, Senior Attorney
Counsel for Defendants

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing reply memorandum was sent by regular U.S. mail and electronically to Daniel T. Ellis, Esq., attorney for Plaintiff at: LYDY & MOAN, LTD., 4930 N. Holland-Sylvania Rd, Sylvania, Ohio 43560 this 14th day of April, 2014.

/s/ John T. Madigan
John T. Madigan, Senior Attorney