UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Shawn Northrup,                                   Case No. 3:12-cv-01544

         Plaintiff

     v.                                          MEMORANDUM OPINION
                                                        AND ORDER

City of Toledo Police Division, et al.,

         Defendants

### I.     INTRODUCTION

Before me is the motion of Defendants the City of Toledo Police Division, Officer David Bright, Officer Donald Comes, and Sergeant Daniel Ray, for summary judgment. (Doc. No. 24). Plaintiff Shawn Northrup opposes the Defendants' motion. (Doc. No. 38). The Defendants have filed a reply. (Doc. No. 44). For the reasons stated below, the Defendants' motion is granted in part and denied in part.

### II.     BACKGROUND

On the evening of June 16, 2010, Northrup was walking down a street in his neighborhood, with his wife, daughter, grandson, and their Yorkshire terrier, and a handgun holstered on his right hip, when Alan Rose drove by on a motorcycle. Northrup and Rose did not know each other, but Rose stopped his motorcycle and began telling Northrup that he could not walk around in public while openly carrying a handgun. Northrup and his wife told Rose that open carry of a firearm is legal in Ohio, but the conversation quickly devolved into an argument. After a few minutes,

Northrup and his family continued walking while Rose called 911. A dispatcher with the Toledo, Ohio Police Division sent Officers Comes and Bright, as well as Sergeant Ray, to investigate.

Officer Bright arrived first. He stopped and exited his car and approached Northrup and his family from behind, while on foot. The parties dispute the exact sequence of the events that took place next. Northrup testified his daughter informed him when she saw Officer Bright's car driving down the street. Northrup's cell phone was clipped to his belt, next to his holster. He took his cell phone off of his belt and accessed the camera feature in order to record the impending encounter with the officer. (Doc. No. 28 at 32-33). When Officer Bright approached, he said "excuse me" to get Northrup's attention. (Id.; Doc. No. 26 at 37). Northrup then turned toward Officer Bright with his cell phone in one hand and the dog's leash in the other. (Doc. No. 28 at 33).

Officer Bright testified he said excuse me and asked Northrup to hand the dog leash to his wife. At this point, Officer Bright states Northrup reached back to remove his cell phone. Officer Bright thought Northrup had made a "furtive movement" toward his handgun. (Doc. No. 26 at 37). Officer Bright then placed his hand on his holstered weapon and ordered Northrup to hand his cell phone and the dog leash to his wife. He ordered Northrup to turn around and place his hands above his head while he removed Northrup's gun from the holster. Officer Bright asked for and received Northrup's driver's license, before handcuffing Northrup and placing him in the back seat of his police cruiser. While Officer Bright entered Northrup's personal information into the computer in his cruiser, Sergeant Ray arrived. Sergeant Ray and Officer Bright discussed the situation before Sergeant Ray contacted the Detective Bureau to determine if Northrup could be charged with committing an offense. Following this phone call, Officer Bright issued Northrup a citation for failure to disclose personal information; this charge ultimately was dismissed following the request of a City of Toledo prosecutor.

### III. STANDARD

A district court shall grant a party's motion for summary judgment if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant may meet its burden by showing there is an absence of evidence to support an element of a claim on which the nonmovant has the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant has satisfied its burden, the nonmovant then must set forth "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor. *Krause v. Jones*, --- F.3d ---, 2014 WL 4337587, at *2 (6th Cir. Sept. 3, 2014). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

### IV. ANALYSIS

Northrup alleges the Defendants violated (1) his First Amendment right to symbolic speech; (2) his right to bear arms under the Second Amendment to the United States Constitution and Article I, section 4 of the Ohio Constitution; and (3) his Fourth Amendment protections against unreasonable searches and seizures and use of excessive force. He also alleges state law claims of assault, battery, wrongful arrest, and malicious prosecution.

In his complaint, Northrup alleges his Fifth and Fourteenth Amendment rights were violated when "Officer Bright violated Mr. Northrup's right to bear arms and deprived him of liberty without due process of law when he seized him for exercising that right absent any lawful justification or probable cause." (Doc. No. 1 at 13). Though coached in due process terms, the

3

substance of Northrup's allegation is that he was seized unlawfully. Therefore, I will evaluate this allegation in the context of his Fourth Amendment claims. *See Albright v. Oliver*, 510 U.S. 266, 273-74, 277 (1994) (Fourth Amendment, and not substantive due process, provides a basis for claims of arrest without probable cause).

In his opposition brief, Northrup argues the Defendants violated Ohio Revised Code § 2921.52, which criminalizes a "sham legal process," and asserts a claim against Officer Bright for "vindictive enforcement." (Doc. No. 38 at 30-32). Northrup did not include either of these claims in his complaint or file a motion to amend his complaint in the nearly two years between the initiation of this action and the Defendants' filing of their summary judgment motion. I will not consider these claims, as a plaintiff may not assert new legal claims for the first time in opposition to a summary judgment motion. *Tucker v. Union of Needletrades, Industrial, and Textile Emp.*, 407 F.3d 784, 788-89 (6th Cir. 2005); *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007).

### A. SECTION 1983 AND QUALIFIED IMMUNITY

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must prove the defendant deprived the plaintiff of a right protected by the Constitution or laws of the United States while acting under the color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). State laws "cannot create federal constitutional rights actionable under § 1983." *Wilson v. Morgan*, 477 F.3d 326, 332 (6th Cir. 2007) (citing *Harrill v. Blount Cnty.*, 55 F.3d 1123, 1125-26 (6th Cir. 1995)).

The doctrine of qualified immunity shields state actors from § 1983 liability based upon their discretionary acts. *Anderson v. Creighton*, 483 U.S. 635, 638-40 (1987). Once the defendant raises the qualified immunity defense, the plaintiff bears the burden of proving (1) he was deprived of a constitutionally-protected right (2) that was "so clearly established that a reasonable officer would understand that his or her actions would violate that right." *Thomas v. Cohen*, 304 F.3d 563, 569 (6th Cir. 2002) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Anderson*, 483 U.S. at 640 ("[I]n the light of pre-existing law[,] the unlawfulness [of the official's actions] must be apparent.").

**B. OFFICER COMES**

The Defendants argue they are entitled to summary judgment on all of Northrup's claims against Officer Comes because his only involvement in this incident was to talk to Rose by telephone about what happened between Rose and Northrup. Northrup does not dispute Officer Comes's testimony that he had no involvement with the arrest and offers no evidence to show Officer Comes played any role at all in the alleged violation of Northrup's rights. I conclude the Defendants have shown the absence of any dispute of material fact and are entitled to summary judgment on all claims against Officer Comes as a matter of law.

**C. FIRST AMENDMENT**

Northrup alleges the Defendants violated "his right to symbolic speech when Officer Bright seized and harassed Mr. Northrup without probable cause and based solely upon his openly carrying a holstered firearm." (Doc. No. 1 at 12). He contends he "was engaged in symbolic speech by openly carrying a firearm in a holster" and that this "expressed his opinion that Ohioans should exercise their fundamental right to bear arms and educate[d] the public that open carry is permissible in Ohio." (Id.). Defendants contend Northrup's First Amendment claim fails because (1) he was not engaged in protected speech and (2) even if Northrup's conduct constitutes protected speech, there is no evidence Officer Bright intended to retaliate against Northrup because of his speech. (Doc. No. 44 at 2-3). Defendants are entitled to qualified immunity on Northrup's First Amendment claim because he fails to show he was deprived of a constitutionally-protected right.

The First Amendment prohibits government officials from retaliating against an individual for the individual's protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). A plaintiff may bring a free-speech claim regarding his conduct rather than his words by showing his conduct conveys a particularized message as well as that, "in the surrounding circumstances," the likelihood is great that those who view the message will understand it. *Spence v. Washington*, 418 U.S. 405, 410-11 (1974). While conduct may be "sufficiently imbued with elements of communication to fall

5

within the scope of the First and Fourteenth Amendments," *id.* at 409, the Supreme Court has rejected "the view that an apparently limitless variety of conduct can be labeled as 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brien*, 391 U.S. 367, 376 (1968).

Northrup argues his rights were violated because Rose's 911 call is undisputed evidence that he openly conveyed his intended message that open carry was permissible. (Doc. No. 38 at 14). In *Baker v. Schwarb*, --- F. Supp. 2d ---, 2014 WL 4111375 (E.D. Mich., August 19, 2014), the court considered the plaintiffs' claim that their First Amendment protections for symbolic speech were violated when police detained them while openly carrying firearms. The Sterling Heights, Michigan Police Department received several 911 calls from individuals who had witnessed James Baker and Shyama Nixon walking down a public sidewalk. Between them, Baker and Nixon carried two holstered handguns and two rifles. The court rejected the plaintiffs' First Amendment claim after noting they "gave no visual cues to provide context for their actions." *Baker*, 2014 WL 4111375 at *10.

The *Baker* court found unpersuasive the plaintiffs' argument that their conduct was protected because "they eventually informed the officers of their intent to exercise their First and Second Amendment rights." *Baker*, 2014 WL 4111375 at *10. As the court noted, under *Spence*, the "relevant inquiry" is whether there is a great likelihood that those who observed the plaintiffs would understand the message they attempted to convey. Here, it is clear Northrup did not convey his intended message simply by openly carrying a handgun, as he and Rose argued about whether Northrup legally could carry a handgun in that manner. The fact that Northrup – like Baker and Nixon – had to explain the message he intended to convey undermines the argument that observers would likely understand the message.

Northrup also fails to identify any case in which a court concluded that gun possession alone conveys any message at all. *Cf. Nordyke v. King*, 319 F.3d 1185, 1190 (9th Cir. 2003) ("Typically a

6

person possessing a gun has no intent to convey a particular message, nor is any particular message likely to be understood by those who view it."); *Burgess v. Wallingford*, 2013 WL 4494481, at *9 (D. Conn. May 15, 2013) ("Carrying a weapon alone is generally not associated with expression."). Moreover, "the surrounding circumstances" on June 16 offer no support to Northrup's intended message. As he notes, he simply was walking on a public sidewalk in his neighborhood with his wife, daughter, grandchild, and dog. Northrup fails to show his action of openly carrying a handgun is "sufficiently imbued with elements of communication" or that "the likelihood was great that the message would be understood by those who viewed it." *Spence*, 418 U.S. at 409, 411. Defendants are entitled to summary judgment on Northrup's First Amendment claim on the basis of qualified immunity. *See Burgess*, 2013 WL 4494481, at *9 (holding officers were entitled to qualified immunity where "reasonable officers could disagree whether or not there was a great likelihood of plaintiff's visible weapon and his shirt [quoting the Connecticut State Constitution regarding the right to bear arms] conveying a message to those who viewed it.").

### D.  SECOND AMENDMENT

Northrup claims Officer Bright violated his right to bear arms under the Second Amendment to the United States Constitution and Article I, sections 1 and 4 of the Ohio Constitution. (Doc. No. 1 at 13-15). I will consider only Northrup's Second Amendment arguments, as rights created by state law are not cognizable in § 1983 actions. *Wilson*, 477 F.3d at 332. Further, I agree with the Defendants that Northrup fails to state any cause of action under Ohio law, as Article I, section 4 of the Ohio Constitution is not self-executing and Northrup fails to identify any case in which a court recognized a similar cause of action.

In *McDonald v. City of Chicago*, 561 U.S. 742, 130 S. Ct. 3020 (2010), the Supreme Court held the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment "right to possess a handgun in the home for the purpose of self-defense" as recognized in *District of Columbia v. Heller*, 554 U.S. 570 (2008). *McDonald*, 130 S. Ct. at 3050. Both the timing of the

7

*McDonald* decision and the manner in which the *Heller* Court framed the right at issue pose insurmountable problems for Northrup's claim.

As Defendants note, the *McDonald* decision was not issued until after the events at issue in this case took place.  (*See* Doc. No. 1 at 3).   Prior to *McDonald*, the Supreme Court had expressly held that the Second Amendment prohibited only Congress from infringing on the right to bear arms and left the states "free to restrict or protect the right under their police powers."  *Heller*, 554 U.S. at 619-20 (citing *United States v. Cruikshank*, 92 U.S. 542, 553 (1875)).  While the *McDonald* Court struck down city ordinances "effectively banning handgun possession by almost all private citizens," 130 S. Ct. at 3026, the *Heller* Court struck down the District of Columbia's firearms regulations only to the extent those laws interfered with a resident's "right to render a firearm operable and carry it about his home in that condition only when necessary for self-defense."  *Heller*, 554 U.S. at 576 and n.2.  Further, the Court expressly stated "the right secured by the Second Amendment is not unlimited" and noted the right to bear arms is not "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."  *Id.* at 626.

Northrup does not challenge a similar city ordinance prohibiting his possession of a handgun in his home.  Instead he asserts a broader claim – that the Second Amendment protects an individual's right to openly carry a handgun on a public sidewalk.  Neither the parties nor my own research has identified any case in which the Second Amendment was held to cover such a right. Instead, several appellate courts have expressly declined to hold this right exists.  *See Drake v. Filko*, 724 F.3d 426, 430-31 (3rd Cir. 2013) (declining to "definitively declare that the individual right to bear arms for the purpose of self-defense extends beyond the home"); *see also Embody v. Ward*, 695 F.3d 577, 581-82 (6th Cir. 2012) ("No court has held that the Second Amendment encompasses a right to bear arms within state parks."); *United States v .Masciandaro*, 638 F.3d 458, 475 (4th Cir. 2011) ("On the question of *Heller*'s applicability outside of the home environment, we think it prudent to await direction from the Court itself."); and *Gonzalez v. Village of West Milwaukee*, 671 F.3d 649, 659

8

(7th Cir. 2012) ("Whatever . . . *Heller* and *McDonald* might mean for future questions about open-carry rights, for now this is unsettled territory.").

Finally, even if *McDonald* could be construed to encompass the right Northrup asserts, his argument that *McDonald* should be applied retroactively is off point. The retroactivity doctrine seeks to meet the demands of "evenhanded justice" by applying a new constitutional rule to all similarly situated criminal defendants. *Teague v. Lane*, 489 U.S. 288, 300-01 (1989). A government official is entitled to qualified immunity from a plaintiff's claims of constitutional violation "unless the official's conduct violated a clearly established constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). A new constitutional rule simply could not have been "'clearly established' at the time of [the] defendant's alleged misconduct." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)); *see also Embody*, 695 F.3d at 581-82. Defendants are entitled to qualified immunity on Northrup's Second Amendment § 1983 claim.

As I stated above, Defendants also are entitled to summary judgment on Northrup's state law claims. Article I, section 4 of the Ohio Constitution states the general principle "[t]he people have the right to bear arms for their defense and security . . . ." OH Const. art. I, § 4. The Supreme Court of Ohio has recognized "the right to bear arms is fundamental and is also subject to limitations." *Klein v. Leis*, 795 N.E.2d 633, 637 (Ohio 2003). Moreover, "a constitutional provision alone has no force unless it is self-executing. A constitutional provision is self-executing if it supplies a sufficient rule by which the protection that it affords can be enforced without legislative enactment." *State v. Jackson*, 811 N.E.2d 69, 72 (Ohio 2004) (citing *State v. Williams*, 728 N.E.2d 342, 352 (Ohio 2000)). Article I, section 4 is not "sufficiently precise" to provide any guidance as to the parameters of permissible state action. *Williams*, 728 N.E.2d at 352.

E. FOURTH AMENDMENT

The Fourth Amendment requires that a police officer determine probable cause exists prior to making an arrest. *Baker v. McCollan*, 443 U.S. 137, 142-43 (1979); *Crockett v. Cumberland Coll.*, 316

9

F.3d 571, 580 (6th Cir. 2003). Probable cause to arrest exists if the police officer knows of facts and circumstances, at the time of the arrest, that are sufficient to support a reasonable belief "the suspect has committed, is committing[,] or is about to commit an offense." *Id.* (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)); *see also Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999). "Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999).

The Fourth Amendment also covers a less intrusive category of searches and seizures known as a *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1 (1968). If an officer has a reasonable suspicion criminal activity is occurring, that officer may briefly stop an individual to make reasonable inquiries designed to confirm or dispel that suspicion. *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993). The officer also may undertake this course of inquiry if the officer has a reasonable suspicion the individual previously committed a crime. *United States v. Hensley*, 469 U.S. 221, 229 (1985). An officer's "reasonable suspicion" must be supported by "specific and articulable facts." *Terry*, 392 U.S. at 21.

While Northrup's encounter with the Toledo Police originated with a 911 call, the Fourth Amendment does not require a heightened showing to justify the dispatch of officers to the scene. *United States v. Gross*, 662 F.3d 393, 398-99 (6th Cir. 2011) (police officers do not violate the Fourth Amendment by approaching an individual in a public place and asking questions) (quoting *United States v. Drayton*, 536 U.S. 194, 200 (2002)). Thus, Northrup's rights were not violated when Officer Bright exited his car and began walking toward Northrup and his family, as consensual encounters between private citizens and law enforcement do not implicate the Fourth Amendment.

Officer Bright testified he had begun talking with Northrup before Northrup reached back toward his cell phone – and his handgun. (Doc. No. 26 at 37). While Officer Bright then saw Northrup had removed only his cell phone, (Doc. No. 26 at 37-38), it is understandable this initial movement caused some alarm. Though Officer Bright clearly knew, prior to approaching him, that

10

Northrup was armed, this movement reasonably could cause Officer Bright to believe Northrup might be dangerous. *See United States v. Hughes*, 517 F.3d 1013, 1016 (6th Cir. 2008) ("There must be articulable and specific facts as to [present] dangerousness." (citing *Sibron v. New York*, 392 U.S. 40, 64 (1968))).

Northrup, however, remembers the encounter differently, as he testified he had his cell phone in his hands before Officer Bright first spoke to him. (Doc. No. 28 at 32-33). The Defendants argue this is immaterial, as they claim "the 9-1-1 emergency call and a man carrying a pistol in the street who fit the description given to the police" provided Officer Bright with reasonable suspicion to conduct a *Terry* stop. (Doc. No. 44 at 7).

This is plainly wrong. While Ohio law forbids individuals from carrying a concealed weapon without a license, there is no prohibition against the open carry of handguns. Northrup was acting within the bounds of Ohio law at the time a then-anonymous person called 911. The full communication from the dispatcher to Officer Bright was that a white male was walking his dog on Rochelle carrying a handgun out in the open. (Doc. No. 26 at 34, 115). Though Rose told the dispatcher, and later Officer Comes, that he had argued with Northrup about his handgun, Officer Bright had no knowledge of this detail. When he arrived on the scene, Officer Bright located a person matching this description – Northrup – and clearly observed he had the gun holstered on his hip, and was not carrying it in his hand. (Doc. No. 26 at 36).

This case is far different from *Campbell v. Stamper*, 244 F. App'x 629 (6th Cir. 2007), which the Defendants cite in support of their argument. The anonymous 911 caller in *Campbell* notified police that a man was on the side of a highway pointing a rifle at passing vehicles. *Id.* at 630. Officers arrived to find Campbell and a rifle leaning on a guardrail next to the highway. Unlike in this case, the police officers in *Campbell* were informed the anonymous caller asserted a crime had occurred.

11

This case also is far different from *Butcher v. City of Cuyahoga Falls*, No. 5:11-cv-939, 2011 WL 5971043 (N.D. Ohio, Nov. 28, 2011), which the Defendants also have cited in support. In that case, police officers responded to a 911 call concerning a man openly carrying weapons to find Butcher carrying a rifle and a handgun while standing in front of the entrance to a drug store. *Id.* at *2. The *Butcher* court expressly noted Butcher's "loitering in front of the store was cause for just as much concern" as if he had entered it. *Id.* at *3. In this case, Northrup was walking down a sidewalk in a residential neighborhood with his wife, daughter, grandson, and dog.

The Defendants also claim it was reasonable for Officer Bright to stop and disarm Northrup because he was "unfamiliar[] with Plaintiff and . . . [lacked] knowledge of what Plaintiff's intentions [were] and whether Plaintiff was intending to engage in a crime." (Doc. No. 44 at 6). The Defendants' argument boils down to a claim that an officer's mere hunch or speculation that an individual might have committed an undefined crime is sufficient to support an investigatory stop. This is simply and clearly incorrect. *Terry*, 392 U.S. at 27 (officer does not act reasonably if he relies on "his inchoate and unparticularized suspicion or 'hunch'").

Northrup's claims are easily distinguishable from additional cases in which courts have applied the doctrine of qualified immunity to defeat a plaintiff's claims, because the Defendants fail to identify any specific and articulable facts to support suspicion of criminal behavior and thus an investigatory stop. *See, e.g., Embody*, 695 F.3d at 580-81 (officer entitled to qualified immunity following investigatory stop of individual carrying a Draco AK-47 pistol, with 11 ½ inch barrel, in state park where gun barrels may not exceed 12 inches); *Combs v. City of Birmingham*, No. 12-14528, 2013 WL 4670699 (E.D. Mich. Aug. 30, 2013) (officers entitled to qualified immunity after stopping an 18 year male openly carrying a rifle to determine whether he was in violation of state law prohibiting individuals under 18 years of age from possessing firearms in public). The Defendants claim Officer Bright could not have known whether Northrup might have been under a disability from owning a firearm, such as a previous felony conviction, a current indictment, or because he

12

might have been under the influence of drugs or alcohol, but fail to offer a single piece of evidence or identify any case law to substantiate any of these theories. (*See* Doc. No. 24 at 16-17).

In sum, the Defendants cannot offer any evidence to support their argument that, by the fact of the 911 call and subsequent dispatch, Officer Bright had a reasonable suspicion that Northrup had committed a crime, was committing a crime, or was about to commit a crime. It is the jury's role to determine whether Northrup or Officer Bright offer the more believable account of their encounter. The Defendants are not entitled to summary judgment on Northrup's Fourth Amendment claims because there is a genuine dispute of material fact as to whether this incident violated Northrup's clearly established right to be free from unconstitutional searches and seizures. Additionally, the Defendants are not entitled to summary judgment on Northrup's excessive force claim, as the permissibility of the use of handcuffs, at least in part, may rise or fall on the constitutionality of the seizure.

**F. FOURTH AMENDMENT *MONELL* CLAIMS**

Northrup asserts the actions of the defendant officers were the result of "one or more interrelated *de facto* policies, procedures, practices and/or customs known to and tacitly or otherwise condoned by City of Toledo, Police Division . . . ." (Doc. No. 1 at 16). Northrup's § 1983 *Monell* claim fails for several reasons. First, the Toledo Police Division is not an entity that is capable of suing or being sued, as it merely is a sub-unit of the City of Toledo. *See, e.g., Williams v. Dayton Police Dep't*, 680 F. Supp. 1075, 1080 (S.D. Ohio 1987); *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006). Moreover, even if I were to construe Northrup's claims against the City of Toledo – an entity which Northrup did not name as a defendant in this lawsuit – Northrup fails to offer any evidence in support of his assertion that the defendant officers "acted pursuant to a long standing policy of formulating charges against law abiding citizens after violating [their] constitutional rights." (Doc. No. 38 at 33). There is no dispute that Officer Bright and Sergeant Ray contacted the Detective Bureau to determine what offense Northrup may have committed. The

13

fact that the charge against Northrup later was dismissed does not transform what allegedly is an established practice into an unconstitutional one. The Defendants are entitled to summary judgment on Northrup's § 1983 *Monell* claims.

### G. STATE LAW CLAIMS

Under Ohio law, political subdivisions are granted broad immunity from suit. O.R.C. § 2744.02. There only are limited exceptions to this rule, which are not applicable here. O.R.C. § 2744.02(B). Therefore, even if I construe Northrup's claims against the Police Division as against the City of Toledo, I conclude the City of Toledo is entitled to summary judgment on all of Northrup's state law claims.

Ohio law provides the employees of a political subdivision with immunity from lawsuits which seek damages for a person's injury or loss "allegedly caused by any act or omission in connection with a governmental or proprietary function." O.R.C. § 2744.03(A). An employee is not immune from liability if "[t]he employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities," or the "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." O.R.C. § 2744.03(A)(6)(a)-(b).

The individual Defendants are not entitled to summary judgment on the Plaintiffs' state law claims for assault, battery, false arrest, and malicious prosecution. Under Ohio law,

> One acts with a malicious purpose if one willfully and intentionally acts with a purpose to cause harm. Malice includes the willful and intentional design to do injury, or the intention or desire to harm another through conduct which is unlawful or unjustified. Bad faith is defined as a dishonest purpose, moral obliquity, conscious wrongdoing, or breach of a known duty through some ulterior motive or ill will. A person acts wantonly if that person acts with a complete failure to exercise any care whatsoever. One acts recklessly if one is aware that one's conduct creates an unreasonable risk of physical harm to another[.] Recklessness is more than mere negligence in that the person must be conscious that his [or her] conduct will in all probability result in injury.

*Pritchard v. Hamilton Twp. Bd. of Trustees*, 424 F. App'x 492, 509 (6th Cir. 2011) (quoting *Spears v. Akron Police Dep't*, 2010 WL 625822, at *4 (Ohio Ct. App. Feb. 25, 2010)); *see also Pritchard*, 424 F. App'x at 509 ("[M]alice means 'an improper purpose, or any purpose other than the legitimate

interest of bringing an offender to justice.'" (quoting *Criss v. Springfield Twp.*, 564 N.E.2d 440, 443 (Ohio 1990))).

I concluded above that there is a genuine dispute of material fact as to whether the Defendants had reasonable suspicion to support a *Terry* stop or probable cause to support an arrest. If a jury concluded the Defendants lacked a reasonable suspicion or probable cause, they may draw the inference that the Defendants' actions were motivated by malice. *Pritchard*, 424 F. App'x at 509-10 (quoting *Melanowski v. Judy*, 131 N.E. 360, 361 (Ohio 1921)). Therefore, statutory immunity does not apply to Northrup's state law claims against Officer Bright and Sergeant Ray.

## H. PUNITIVE DAMAGES

As I noted, Northrup did not name the City of Toledo as a defendant. Even assuming his punitive damage claim could be construed against the City of Toledo, it is settled law that municipalities are immune from punitive damage claims under § 1983, *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981), as well as under Ohio law. Ohio Rev. Code § 2744.05(A).

Construing the evidence in the light most favorable to the plaintiff, there is a genuine dispute of material fact as to whether Officer Bright and Sergeant Ray had probable cause to arrest Northrup, and thus a jury might draw the inference that Officer Bright and Sergeant Ray acted with malice. *See Hope Academy Broadway Campus v. Integrated Consulting & Mgt.*, 2011-Ohio-6622, at *6 (Ohio Ct. App. Dec. 22, 2011) (punitive damages available against individual defendants who acted with malice). Therefore, the Defendants are not entitled to summary judgment on Northrup's punitive damage claim against the officer defendants.

## V. CONCLUSION

For the reasons stated above, the Defendants' motion for summary judgment, (Doc. No. 24), is granted in part and denied in part. The Defendants are entitled to summary judgment on the following claims: (1) First Amendment – right to symbolic speech; (2) right to bear arms – Second Amendment and Article I, section 4 of the Ohio Constitution; (3) Fourth Amendment *Monell* claims;

15

(4) state law and punitive damage claims against the Police Division of the City of Toledo; and (5) all remaining claims against Officer Comes.  The Defendants are not entitled to summary judgment on the Plaintiffs' claims against Officer Bright and Sergeant Ray (1) for violation of his Fourth Amendment rights, (2) for assault, battery, wrongful arrest, and malicious prosecution under Ohio law, and (3) for punitive damages.

    So Ordered.

                                           s/ Jeffrey J. Helmick
                                           United States District Judge